**DETAINED**
**Deportation Scheduled**
**June 16 or 17, 2008**
**EMERGENCY STAY**
**OF DEPORTATION**
**REQUESTED**

**United States District Court**
**for the District of Columbia**

**Jean Marc Nken**
**A# 95223548**
**Howard County Detention Center**
**7301 Waterloo Road**
**Jessup, MD 20794**

| | | |
|---|---|---|
| **Jean Marc Nken,** | ) | |
|    **Petitioner,** | ) | **Case No. _____** |
| | ) | |
| **v.** | ) | **Emergency Petition** |
| | ) | **for Habeas Corpus,** |
| **Michael Chertoff, Secretary of** | ) | **Injunctive Relieve, and** |
| **Department of Homeland Security,** | ) | **Stay of Removal** |
|    **Respondent** | ) | |

**EMERGENCY PETITION FOR A WRIT OF HABEAS CORPUS,**
**INJUNCTIVE RELIEF**
**AND FOR STAY OF REMOVAL**

## I.    INTRODUCTION

1.    The dual bases for this habeas corpus petition are Petitioner's absolute right not to be

returned under any circumstances to a situation of torture under Article 3 of the Convention

Against Torture, ratified by the United States and fully implemented and enacted as part of U.S.

law by domestic statute, Convention Against Torture and Other Cruel, Inhuman or Degrading

Treatment or Punishment ("CAT"), entered into force June 26, 1987, 39 U.N. GAOR Supp. (no.

51) 197, U.N. Doc. E/CN.4/1984/72 Annex (1984); Foreign Affairs Reform and Restructuring

Act of 1998, Pub. L. No. 105-277, Div. G, Title XXII, Section 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note to 8 U.S.C. Section 1231), and his fundamental Due Process liberty interest in not being deported while legal proceedings are pending to adjudicate valid claims currently being considered by the immigration courts.  These rights are being denied because the U.S. Government is attempting to deport the Petitioner while he has a Motion to Reopen his CAT claim based on changed country conditions pending before the Board of Immigration Appeals ("BIA"), and new evidence has been presented to the BIA regarding the threat of torture that Petitioner faces, including the recent arrest of his brother.

## II.    THE PARTIES

2.    Petitioner is Jean Marc Nken, a national and citizen of Cameroon, who is detained in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Howard County Detention Center, 7301 Waterloo Road, Jessup, MD 20794.  Petitioner is in imminent danger of removal to Cameroon where he faces a significant likelihood of torture on account of his political opinion.

3.    Cited as Respondent in his official capacity is Michael Chertoff, Secretary of the Department of Homeland Security, who exercises titular and supervisory authority over ICE, and over the operations of the ISAP supervised parole program.

## III.    PROCEDURAL BACKGROUND

4.    Petitioner's application for asylum, withholding of removal and protection under the Convention Against Torture ("CAT") was denied by an Immigration Judge ("IJ") on March 4, 2005.  When these proceedings were taking place he had a pending I-130 Petition for Alien Relative filed on his behalf by his U.S. citizen wife.  This application was made to the United States Citizenship and Immigration Service to demonstrate the bonafide nature of Petitioner's

marriage to a U.S. citizen and to seek lawful status on that basis.  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on March 31, 2005 and submitted a motion to remand the case to the IJ in order to apply for adjustment of status based on his bonafide marriage to a U.S. citizen and his pending I-130 application.

5.      On June 16, 2006 the BIA affirmed the IJ's decision and denied the motion to remand because the Department of Homeland Security ("DHS") had not yet approved the I-130 petition.  The BIA issued a final order of removal.  Petitioner filed a Petition for Review with the Fourth Circuit Court of Appeals ("Fourth Circuit") on July 14, 2006.

6.      On August 8, 2006 Petitioner and his wife had an I-130 interview with U.S. Citizen and Immigration Services.  At this interview ICE officials arrested Petitioner and placed him in detention.  Petitioner was released from detention and enrolled in the Intensive Supervision and Appearance Program ("ISAP"), a form of supervised parole, on October 30, 2006.

7.      On August 22, 2006 Petitioner's I-130 was approved, making him statutorily eligible for adjustment of status, although the Immigration Service generally takes the position that it will not grant adjustment in cases where a final order of removal is outstanding.  Petitioner's attorney submitted a letter to ICE Chief Counsel George Maugans requesting that ICE join a motion to reopen Petitioner's case for emergency medical and humanitarian reasons so that his adjustment claim could be considered.  Chief Counsel refused to join a motion to reopen for this purpose.

8.      On April 3, 2007 the Fourth Circuit denied the Petition for Review appealing the Immigration Courts' decision denying asylum and CAT protection.  On May 6, 2008 Petitioner filed a Motion to Reopen before the BIA based on changed country conditions, citing among other facts the arrest of his brother.  This motion is currently pending.

9.      On May 30, 2008 ICE officials arrested Petitioner at gunpoint outside of his and his

family's home.  Petitioner was placed in detention at the Howard County Detention Center, 7301

Waterloo Road, Jessup, MD 20794.  Petitioner is currently being held in this facility.  On June

11, 2008 he was informed by ICE officials that he will be deported on June 16 or 17 despite his

pending proceedings.  His attorney received similar indications of imminent deportation.  *See*

Gott  and Larson affidavits.

### IV.    OPERATIVE FACTS

10.     Petitioner is a 40 year old native and citizen of Cameroon.  He arrived in the United

States on April 9, 2001 in Miami and filed a voluntary application for asylum and protection

under CAT on December 5, 2001, well within the one year statutory period.  Petitioner fled

Cameroon after enduring persecution and torture for his opposition to the government of

President Paul Biya and his family has been targeted for persecution because of their political

opinions and activities.

11.     On November 4, 2004 Petitioner married his current wife, Brigitte Beloeck.  Ms.

Beloeck, a U.S. citizen, filed an I-130 on behalf of her husband on November 15, 2004.  They

currently have a one year old child who was born in the United States, and is a U.S. citizen.

They have been happily married for over three years, living together during that entire period, as

USCIS properly determined when the agency found the Petitioner eligible for adjustment to

status based on his marriage and family status.

12.     Petitioner was enrolled in the ISAP supervised parole program after his arrest at the I-130

interview on August 8, 2006.  His order of supervision initially required him to report to the

ISAP office in Baltimore every two weeks.  ISAP officials and their ICE supervisors

continuously put pressure on the Petitioner to leave the United States, even though Petitioner had

an appeal pending before the Fourth Circuit. ISAP representatives repeatedly told Petitioner that

he should leave the United States immediately. With his approved I-130 Petitioner was eligible

to receive a green card but for the deportation order based on denial of his asylum claim.

Despite repeated requests, however, ICE refused to join a Motion to Reopen to allow Petitioner

to adjust his status and receive a green card. At one ISAP meeting around May 2007 Petitioner's

case manager told him that he would now have to wear an ankle monitor and report to ISAP five

days a week. The ISAP officers gave no explanation for the extremely rigorous supervision

requirements.

13.    Petitioner and his wife live at 1836 Metzerott Road, Apartment 1508, Hyattsville, MD

20083. They have a one-year old son. ISAP's requirements that Petitioner report on a daily

basis to the ISAP office in Baltimore required several hours commute to and from Baltimore

each day and was a severe financial burden on his family. Since Mr. Nken did not have work

authorization, his wife is the sole source of income for the family, despite the fact that she suffers

from a debilitating medical condition. This condition, combined with her full time employment,

meant that Mr. Nken had to take their infant son with him every day to his meetings with ISAP.

He is the primary caretaker for his son, and increasingly has had to care for his wife as well due

to her condition. Even after he received work authorization in December 2007, the rigorous

ISAP reporting schedule, including the time spent commuting to Baltimore, left Mr. Nken unable

to work.

14.    Petitioner's wife's illness gradually left her unable to work full time. As a result, the cost

of commuting to and from Baltimore five days a week became impossible to meet. Petitioner

repeatedly discussed the financial hardships that the daily supervision arrangement posed to him

and his family, and repeatedly tried to work out a more reasonable arrangement, but his ISAP

case managers and the ICE supervisors refused, and threatened him with deportation in retaliation for his complaints.

15.    One ISAP supervisor, Mrs. Moore, told Mr. Nken that she would try to get his supervision schedule amended.  She arranged a meeting with Mr. Nken and ICE officials with supervision over ISAP, Paul Welke and Brian Schuster.  When Mr. Nken arrived at this meeting Mr. Welke physically pushed Mr. Nken into an office and began to yell at him.  Mr. Welke told Mr. Nken that Mrs. Moore had been fired for trying to assist him.  Mr. Welke told Mr. Nken he should leave the country immediately.  After this incident Petitioner's attorney, Ronald Richey, met with Mr. Welke.  Welke told him that he was under intense pressure from ICE officials to arrest and deport Petitioner because Petitioner had been in the country for a long time.  Richey reminded Welke that Petitioner had a sick wife and baby to care for, but Welke responded that one phone call could have the child placed in protective custody and the problem would be solved.

16.    In February of 2008 conditions in Cameroon worsened such that new and additional supportive evidence that Petitioner would face torture should he be returned to that country came to light.  President Biya announced his intention to amend the Cameroonian Constitution to eliminate presidential term limits.  The resulting protests led Biya to arrest and torture around 1600 protesters, including Petitioner's brother.  Around 100 people were killed extra-judicially by Biya's soldiers as a result of the protests.

17.    On April 10, 2008 the Cameroonian parliament voted to approve Biya's suggestion to eliminate presidential term limits despite suspicions of bribery that had been raised against the president.  The elimination of presidential term limits has essentially left Biya, president since

1982, with the ability to assume a position of lifetime dictator, further reinforcing Petitioner's renewed fear of further persecution and torture.

18.     On or around May 13, 2008 Petitioner called the ISAP office and told his case manager, Mr. Carter, that he had no money to pay for gas to get to Baltimore that day. His case manager told Petitioner just to call in, as he had done that day, when he could not afford to come to Baltimore. Petitioner continued to call in to his case manager rather than commute to Baltimore. Despite his case manager's indication that this arrangement was sufficient, ICE officials came to Petitioner's apartment to arrest him. Petitioner was not home at the time and was informed of the ICE officials' visit by neighbors.

19.     On or around May 22, 2008 Petitioner called in to his case manager. The case manager informed Petitioner that he had been removed from the ISAP program and was subject to immediate deportation.

20.     On May 30, 2008, Petitioner was arrested and detained by ICE. ICE officials informed him on June 11, 2008 that they had acquired all of the necessary travel documents and Petitioner will be deported on June 16 or 17. These officials told Petitioner that he is being deported as a direct result of violating the arbitrary and unreasonable ISAP supervision requirements that had been imposed on him. Petitioner is concerned that his wife will not be able to care for their son or for herself if Petitioner is deported because of her serious medical conditions. He also fears being removed to Cameroon where he faces torture before the BIA has adjudicated his Motion to Reopen that is currently pending.

21.     If returned to Cameroon, Petitioner faces a specific and individual threat of torture. President Biya's military junta is actively searching for known political dissidents, including the

Petitioner, and Petitioner fears he will again be targeted by Biya's regime if he returns to Cameroon, as the recent arrest of his brother indicates.

## V.     JURISDICTION

22.     This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. Section 2241(a), (c)1 and (c)3 in that this is a petition for a Writ of Habeas Corpus, the Petitioner is in custody under the authority of the United States, and subject to action (deportation) that would place his life and security in jeaoparty, "in violation of the Constitution, or laws, or treaties of the United States." 28 U.S.C. Section 2241(c)(3). This petition raises significant federal questions including the violation of fundamental Constitutional and human rights. *See* 28 U.S.C. Section 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

23.     Petitioner is "in custody" for habeas purposes not only because he is currently being held in a detention center, but because the U.S. Government is actively seeking to arrange his deportation. *See Ying v. Kennedy*, 292 F.2d 740, 742 (DC Cir. 1961).

### A.  This Court has Jurisdiction over the Parties Exercising Legal Control Over Petitioner's Deportation.

24.     This Court has jurisdiction over the person primarily responsible for Petitioner's deportation, the Secretary of DHS. He exercises principal and supervisory control over those federal officials making ultimate decisions regarding Petitioner's deportation, specifically imposing arbitrary and unreasonable ISAP reporting requirements that were impossible to meet, causing his arrest and imminent deportation.

25.     Habeas jurisdiction lies in the location of the person with legal control over the Petitioner, not necessarily only in the jurisdiction where the petitioner is physically held in custody. In *Braden v. Thirtieth Judicial Court of Kentucky*, 410 U.S. 484, 494-95 (1973), the

Supreme Court stated that "read literally, the language of Section 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian" because "the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."

26.    In *Rumsfeld v. Padilla*, the Supreme Court explained that when a habeas petition challenged a matter other than direct physical custody, the proper respondent was the person with legal control over the petitioner.  542 U.S. 426, 427, 124 S.Ct. 2711, 2713 (2004).

27.    Here, the Secretary of the DHS is the proper Respondent.  "Historically, the question of who is … the appropriate respondent in a habeas suit depends primarily on who has power over the petitioner."  *Henderson v. INS,* 157 F.3d 106, 122 (2d Cir. 1998).  Since the creation of DHS and the reorganization of the functions of the INS to DHS, the Secretary of DHS exercises primary supervisory authority over ICE.  Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  Since this habeas petition is not focused on issues associated with the Petitioner's physical confinement, but instead challenges the arbitrary and unconstitutional nature of his deportation during pendency of his Motion to Reopen before the BIA, the "immediate custodian rule" is inapplicable and the proper respondent is the official exercising legal control over Petitioner who is most directly responsible for the arbitrary and unlawful policies and actions being alleged.  *See Rumsfeld v. Padilla*, 542 U.S. at 438.

28.    Because the office of the Secretary of Homeland Security is in the District of Columbia, this Court has personal jurisdiction over the official exercising primary supervisory power over the Petitioner and over the policies and practices leading got his imminent and unlawful deportation.  All ICE field offices and ISAP offices are overseen by DHS in Washington, DC. The decision to create the ISAP program and vest its employees with the power to create Orders

of Supervision was made in Washington, DC.  Supervision and decisions for all individuals in

the ISAP reporting process are carried out by DHS officials in Washington, DC.  DHS cannot

avoid responsibility for unconstitutional violations of liberty and denials of justice by alleging

that the Petitioner's physical custody is in Maryland since that physical custodian is not

responsible for the policies and actions producing the Constitutional violations being alleged in

this Petition.  Since Petitioner challenges the legality of DHS policies and actions, rather than the

order of the Immigration Courts, the petition is properly filed where those policies are made and

the actions overseen.

### B.  This Court has Subject Matter Jurisdiction over Petitioner's Habeas Corpus Petition.

29.     The provisions of the REAL ID Act set forth at 8 U.S.C. Section 1252, which restrict

jurisdiction of the District Courts over challenges to deportation proceedings, are not applicable

to Petitioner's case since Petitioner is challenging issues totally independent of the deportation

proceedings themselves.

30.     The REAL ID Act does not eliminate habeas jurisdiction over challenges to separate

issues independent of the deportation proceedings themselves.  *See Puri v. Gonzales,* 464 F.3d

1038, 1041 (9th Cir.2006) ("the REAL ID Act's jurisdiction-stripping provisions ... does [sic] not

apply [if] claim is *not a direct challenge to an order of removal* ") (emphasis added).  *See*

*also Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) ("There is no reason to believe that section

1252(b)(9)'s exception for independent claims is restricted to those related to detention");

*Kumarasamy v. Att'y Gen.,* 453 F.3d 169, 172 (3d Cir.2006) (habeas petition appropriate to

challenge whether petitioner received notice of removal order); *Ali v. Gonzales,* 421 F.3d 795,

797 n. 1 (9th Cir.2005) (habeas jurisdiction upheld for challenge to choice of removal country).

Petitioner is raising Due Process issues associated with his deportation during the pendency of

his Motion to Reopen as a violation of the Convention Against Torture, and challenging the arbitrary and irrational supervision requirements imposed on him by ISAP and ICE that placed him in the position where imminent deportation is not being threatened.

## VI.    THE PETITION FOR ISSUANCE OF A WRIT OF HABEAS CORPUS

31.    Paragraphs 1 through 30, inclusive of this document, are incorporated herein by reference as though set out fully at this point in the Petition for Issuance of a Writ of Habeas Corpus.  This petition raised a number of core legal and Constitutional issues associated with the arbitrary treatment of the Petitioner that has materially infringed on his Due Process rights as a resident alien.

32.    In light of the fundamental legal and Constitutional issues raised by this Petition, the Petitioner is entitled "to a meaningful opportunity to demonstrate that he is being held pursuant to [a violation of the U.S. Constitution]" and this Court has "the power to order the conditional release of [the] unlawfully detained [Petitioner]."  *Boumediene v. Bush*, 553 U.S. ____ (2008).

### A.  ICE's Plan to Deport Petitioner Before his Motion to Reopen Has Been Adjudicated is a Violation of Due Process and of the Convention Against Torture

33.    Deporting Petitioner before the BIA adjudicates his pending Motion to Reopen would violate the Convention Against Torture and its implementing legislation, as well as Petitioner's right to Due Process.  Under the law, Petitioner is entitled to file a Motion to Reopen based on changed circumstances in his country that materially impact on the likelihood of his being subjected to torture.  8 C.F.R. § 1003.2(c)(3)(ii).  He is entitled to a determination of his rights under that Motion by the BIA before any adverse action, such as deportation, is taken.

34.    Aliens in the United States are entitled to Due Process, "whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001).  *See also Plyler v. Doe*, 457 U.S. 202, 210 (1982) (Aliens in the U.S. under final orders of removal

are 'persons' for the purposes of the Due Process Clause"). Under certain circumstances deportation can represent a significant deprivation of Due Process liberty interests. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Deportation "may result also in loss of both property and life, or of all that makes life worth living." *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922). The Supreme Court has described deportation as an action that "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945). The Court went on to state that "[m]eticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness." *Id.* Deporting an alien without allowing him the opportunity to have valid legal claims adjudicated would severely infringe on his liberty interests. *See Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442 (D.C. Fla 1980).

35.    Removing Petitioner at this stage, while legal proceedings are pending, would deprive him of his right to have his Motion adjudicated and his right to any relief that the BIA may find appropriate. Once Petitioner is deported, even if the BIA found his Motion meritorious, there is no certainty that Petitioner could be found and returned to the United States, and in any case he would be placed in a situation where he likely would be subjected to torture before being found and returned to the United States. The right to file a Motion to Reopen is meaningless without the right to remain in the United States while the motion is adjudicated and to actually receive the benefit of any relief granted by the Immigration Courts. This is particularly true when the relief Petitioner is seeking is protection from torture. The efficacy of the BIA procedures available to Petitioner, and his right to due process adjudication of his legal claims, would be significantly undermined, and he would be placed in a situation where his physical well-being

and personal rights and interests would be negatively impacted without Due Process protections being observed..

36.    Deporting Petitioner during the pendency of the Motion to Reopen would violate § 2242 of The Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), the implementing statute of the Convention Against Torture, and would violate Article VI of the Constitution establishing the treaties and laws of the U.S. as the supreme law of the land.  The Convention Against Torture provides that State parties must not, under any circumstances or for any reason, return aliens to countries where it is more likely than not they will be tortured.  United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment 1465 U.N.T.S. 85, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 50, Art. 3, U.N. Doc. A/39/51 (1984).  The prohibition against return to torture is absolute.  Article III of CAT states that "no State party shall expel, return ("*refouler*") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  The United States ratified the treaty in October 1994, making no reservations to Article 3.  S. Rep. 102-30 (Apr. 9, 1991).  Congress passed § 2242 of FARRA to fully implement Article 3 in the same unconditional terms found in the treaty itself.  An alien in the United States cannot be returned to a country if he can show it is more likely than not he will be tortured there.  The Petitioner has a claim pending to that effect before the BIA in the form of a Motion to Reopen. This Motion notes, among other facts, the recent arrest of his brother in Cameroon for his political activities.  His deportation before these pending claims can be adjudicated would, on their face, be inconsistent with the requirements of the Convention Against Torture and FARRA.

37.    Significant political changes and resulting violence in Cameroon have provided new circumstances and information highly relevant to Petitioner's claim that it is more likely than not

he will be tortured if returned to Cameroon.  Petitioner is entitled to present this new information

in the form of a Motion to Reopen.  Given the absolute nature of the prohibition on return to

torture, the U.S. government has an obligation to refrain from deporting the Petitioner to

Cameroon before the BIA can consider whether there are substantial grounds to believe he will

be tortured in light of changed conditions in that country.

### B. The Supervision Requirements Imposed on Petitioner by ISAP Were Arbitrary and Irrational and Cannot Provide a Lawful Basis to Justify Petitioner's Immediate Deportation

38.     Petitioner is currently detained and facing deportation within six days as a direct result of

an additional violation of his Due Process rights.  The supervision requirements imposed by

ISAP officials operating under the supervision and control of the Respondent, mandating daily in

person reporting when this was economically and physically impossible, were unjustifiably

arbitrary and placed Petitioner in a position of being unable to comply.  Despite having no

criminal record, strong family ties, and having been in compliance with supervision for several

months, Petitioner's supervision requirements were arbitrarily changed one year ago so that he

had to wear an ankle monitor and report to ISAP five days a week.

39.     Reporting to ISAP involved a roundtrip commute of several hours.  This daily commute

would be expensive for anyone, but ISAP officials were aware that Petitioner had no work

authorization and that his wife was supporting the entire family and could not work full time

because of illness.  Even after Petitioner informed his case managers that his wife had developed

a debilitating illness that left her unable to work full time and that she could barely afford to feed

their child even without paying for Petitioner's daily trips to Baltimore ISAP officials refused to

alter the supervision requirements.  Despite this hardship, Petitioner complied with the excessive

supervision requirements for one year, commuting to Baltimore five days a week, bringing his baby son along while his wife worked or was too ill to care for the child.

40.     When Petitioner literally no longer had the funds to pay for gas to commute to Baltimore he informed his case manager over the telephone that he could not come to the ISAP office that day.  Petitioner's failure of compliance was not due to a desire to avoid supervision or to disappear.  He maintained telephone contact with his case manager as an effort to comply to the fullest extent possible.  ISAP imposed impossible requirements on Petitioner, and ICE quickly arrested and detained him when he failed to meet these impossible requirements.

41.     Petitioner would not be in this position, facing deportation during the pendency of his Motion to Reopen, but for the arbitrary, unlawful and irrational requirements imposed under the ISAP program by the Respondent.  His Due Process rights and ability to have his claims heard, as well as the protections of Article 3 of the Convention Against Torture and Section 2242 of FARRA, are being violated because Petitioner was put in a position of being unable to comply with his supervision order, and is being subjected to arrest and immediate deportation on that basis.  He is now detained and facing imminent deportation as a result of arbitrary and irrational supervision requirements.  In Petitioner's case the ISAP program has served as a system to facilitate the arrest and deportation of aliens rather than a system to monitor the status of aliens and ensure their presence.  Arbitrary and impossible requirements imposed on aliens under Orders of Supervision cannot be used to justify denial of their Due Process rights to have their claims heard by the Immigration Courts.  Such a practice certainly cannot be used to circumvent the United States' obligations under FARRA and the Convention Against Torture.

### C.  Petitioner's Case Meets the Judicial Requirements for a Stay of Removal

42.     Petitioner's is entitled to a Stay of Removal under the analysis and eligibility criteria establsihed by the Seventh Circuit Court of Appeals and other Circuit Courts.  *See Sofinet v. INS*, 188 F.3d 703 (7th Cir. 1999).  "The movant seeking a discretionary stay of deportation must demonstrate: a likelihood of success on the merits; that irreparable harm would occur if a stay is not granted; that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and that the granting of the stay would serve the public interest."  *Id.* at 706. To show likelihood of success on the merits, the movant must show only that his chances are "better than negligible."  *Id.* at 707.

43.     Petitioner has a reasonable likelihood of success on his Motion to Reopen.  The recent violence in Cameroon was documented by the State Department and several news agencies, and their reports were submitted to the BIA along with the Motion.  This violence is directly relevant to Petitioner's claim.  He has already suffered persecution and torture for opposing President Biya.  Now President Biya has solidified his control of the country and begun a renewed campaign of suppressing opposition.  Petitioner's brother was arrested in connection with the latest crack down on political dissidents, and informed Petitioner that Biya's soldiers were searching for known political dissidents, including Petitioner.  This worsening in conditions in Cameroon justifies a reopening of Petitioner's claim for asylum and protection under the Convention Against Torture.

44.     Second, Petitioner will be irreparably harmed if he is deported to Cameroon before the BIA can adjudicate his petition.  Petitioner is seeking protection from persecution and torture, meaning the stakes could not be higher in his case.  He has significant reason to fear that he will face torture if deported.  At the very least he is entitled to have the BIA determine whether he

may seek protection in the United States. If Petitioner is deported and tortured he could suffer severe physical harm or even death, neither of which can be undone. Even if his case was reopened after he was deported, any torture that he suffered in the meantime would still be irreparable. Furthermore, Petitioner would not likely be able to return to the United States even if the Immigration Courts deemed him eligible for protection. Once he is deported the U.S. Government will not be able to protect him, redress any harm he may suffer, or vindicate his rights even if the BIA determined that his case should be reopened and that he is entitled to protection in the United States.

45.     Third, the harm Petitioner would be subjected to if deported greatly outweighs any possible harm to the U.S. Government, and staying his deportation serves the public interest. Petitioner has no criminal record. He has not been deemed a criminal or a threat to national security. He is a refugee seeking protection from torture, and has been trying to care for his U.S. citizen wife and child in a dedicated and highly responsible and caring way. The U.S. Government faces no conceivable harm by allowing him to remain in the United States while the Immigration Courts determine if he should receive protection under his pending Motion to Reopen. In fact, it is in the interest of the U.S. Government to uphold its obligations under the Due Process Clause of the U.S. Constitution and the Convention Against Torture rather than violating important U.S. civil rights and human rights principles by denying Due Process rights and potentially subjecting an alien to unlawful refoulement to torture. Furthermore, allowing Petitioner to leave detention and work to support his family will prevent his wife and child from becoming public charges. For these reasons it is in the interest of all parties that Petitioner's deportation be stayed during pendency of his Motion to Reopen and that he be released from detention into a supervision program in good standing.

WHEREFORE, Petitioner, Jean Marc Nken, prays this Honorable Court to issue a Writ of Habeas Corpus in his favor and to grant him the following relief:

1.  Order a Preliminary Injunction against the United States and all of its officers, agents and service, prohibiting the United States Government from deporting Petitioner until further Order of this Court to prevent removal of the Petitioner to Cameroon before adjudication of his Motion to Reopen,

2.  Order an immediate release from detention by DHS, under a supervised release and parole program that has reasonable standards of compliance suitable to the Petitioner's circumstances, and,

3.  Order such other relief as the Court deems appropriate under the circumstances of this case.

Respectfully submitted this 12th day of June, 2008 by:


_____
Morton Sklar (DC Bar # 144139)
Executive Director
and
Lynsay Gott
Equal Justice Works Fellow and
Refugee Project Associate
Human Rights USA
2029 P Street NW, Suite 301
Washington, DC  20036
Ph: 202-296-5702
Fax: 202-296-5704
Lgott@humanrightsusa.org
*Counsel for the Petitioner*

with the assistance of

Julie Larson
Kansas University School of Law,
Avani Patel
University of Georgia School of Law,
Tara Rucker
American University Washington College of Law,
and
Jessica Trinh
University of Maryland School of Law
*Legal Interns*

**United States District Court**
**for the District of Columbia**

**Jean Marc Nken**
**A# 95223548**
**Howard County Detention Center**
**7301 Waterloo Road**
**Jessup, MD 20794**

| | | |
|---|---|---|
| **Jean Marc Nken,** | ) | |
| **Petitioner,** | ) | **Case No. _____** |
| | ) | |
| **v.** | ) | **Emergency Petition** |
| | ) | **for Habeas Corpus,** |
| **Michael Chertoff, Secretary of** | ) | **Injunctive Relieve, and** |
| **Department of Homeland Security,** | ) | **Stay of Removal** |
| **Respondent** | ) | |

**DRAFT ORDER**

Based on the Habeas Corpus Petition filed by the Petitioner, the Court HEREBY ORDERS the
following:

A. A Stay of Removal is hereby issued against the United States and all of its officers,

agents and service until further Order of this Court to prevent Petitioner's deportation

during pendency of his May 6, 2008 Motion to Reopen and during the pendency of

these Habeas Corpus Petition proceedings before this Court,

B. Petitioner shall immediately be released from detention by DHS under a supervised

release and parole program that has reasonable standards of compliance suitable to the

Petitioner's circumstances, and

C.  The Government is given 30 days to respond to the Petitioner's Habeas Corpus Petition

and to show cause why the Petitioner should not be brought before this Court and

immediately released from confinement.


Date:_____                    _____
                                              Judge
                                              United States District Judge

**CERTIFICATE OF SERVICE**

This is to certify, under penalty of perjury, that a true and complete copy of Petitioner's

Emergency Petition for Habeas Corpus, Injunctive Relief, and for Stay of Removal were served

on this date to Respondent and attorneys for the Respondent at the addresses below:


Michael Chertoff
Secretary of Homeland Security
DEPARTMENT OF HOMELAND SECURITY
Washington, DC 20528

Jeffrey Stuart Bucholtz
U.S. DEPARTMENT OF JUSTICE
Room 3605
950 Pennsylvania Avenue, NW
Washington, DC 20530

Michelle Gorden Latour, Assistant Director
Kathryn Louise Moore
Michele Yvette Frances Sarko
Tyrone SojourneR
M. Jocelyn Lopez Wright
U. S. DEPARTMENT OF JUSTICE
Office of Immigration Litigation
Ben Franklin Station
P. O. Box 878
Washington, DC 20044

Jeffrey A. Taylor
United States Attorney
U.S. Attorney's Office for the
District of Columbia
555 4th Street, NW
Washington, DC 20530

George William Maugans, III
IMMIGRATION & CUSTOMS
ENFORCEMENT
31 Hopkins Plaza
Baltimore, MD 21201-000


Signed and certified to this 6th day of June, 2008 by:


_____
Morton Sklar
Executive Director
Human Rights USA

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jean Marc Nken | Michael Chertoff, Secretary of Homeland Security |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Morton Sklar<br>Human Rights USA<br>2029 P Street NW, Ste.301<br>Washington, DC 20036 | Jeffrey A. Taylor<br>U.S. Attorney for the District of Columbia<br>555 4th Street NW<br>Washington, DC 20530 |

## II. BASIS OF JURISDICTION

(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**        OR        ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ⊙ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| [X] 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 2241 - Petitioner's deportation while he has legal claims pending will violate Due Process Clause and Convention Against Torture

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in compl.   **JURY DEMAND:**   YES ☐   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO [X]   If yes, please complete related case form.

DATE   June 12, 2008   SIGNATURE OF ATTORNEY OF RECORD   *Morton Sklar*

---

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT   (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

### List of Attachments

| | | |
|---|---|---|
| 1. | **Affidavit of Lynsay Gott** | **Attachment A** |
| 2. | **Affidavit of Julie Larson** | **Attachment B** |
| 3. | **Motion to Reopen Based on Changed Country Conditions** | **Attachment C** |
| 4. | **Approval Notice for I-130 Petition for Relative Visa** | **Attachment D** |
| 5. | **Decision of the Fourth Circuit Court of Appeals** | **Attachment E** |
| 6. | **Decision of the Board of Immigration Appeals** | **Attachment F** |

Attachment A

Affidavit of Lynsay Gott

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

```
****************************************************************************
In Re                      *
                           *
Jean Marc Nken             *       AFFIDAVIT OF LYNSAY GOTT
                           *       in Connection with Petition for Habeas Corpus
A# 95223548                *
****************************************************************************
```

**AFFIDAVIT**

1.  I, Lynsay Gott, swear and affirm that I am attorney in good standing with the Maryland Court of Appeals.  I work with Morton Sklar (DC Bar # 144139) at the World Organization for Human Rights USA in Washington, DC as an Equal Justice Works Fellow dealing with refugee cases.

2.  The facts presented in this habeas petition were related to me by the Petitioner, Jean Marc Nken, and his immigration attorney, Ronald Richey.

3.  I first spoke to Mr. Nken and his attorney in November of 2007.  Mr. Nken explained his situation, including his daily reporting requirement under ISAP.  At the time I was compiling information on abuses of authority by Immigration and Customs Enforcement regarding aliens in supervision programs.

4.  Mr. Nken contacted me on May 13, 2008 when he no longer had the funds to commute to Baltimore.  He told me that he had reported to his ISAP case manager over the phone, and that the case manager told him to continue to report telephonically.

5.  Despite the ISAP case manager's assurances to Mr. Nken, on May 22, 2008 Mr. Nken told me that his case manager informed him he had been removed from the program and that ICE officials were looking for him to arrest and deport him.

6.  Mr. Nken called my office on May 30, 2008 after his arrest by ICE officials.  On June 2, 2008 I visited Mr. Nken at the Howard County Detention Center where he retained me and Mr. Sklar as counsel.  I then spoke with the ICE official in possession of Mr. Nken's file, Diona Ellis, at ICE offices in Baltimore.  Ms. Ellis informed me that ICE was actively seeking to deport Mr. Nken as soon as possible.  She said that they were in the process of arranging Mr. Nken's travel documents, and since ICE was already in custody of Mr. Nken's passport that process would be completed quickly.  Ms. Ellis also informed me that Mr. Nken had been arrested and was now facing deportation because of his alleged violation of his ISAP supervision requirements.

7.   Mr. Nken called me at my office on the afternoon of June 11, 2008 to say that he had been contacted by an ICE official, Crystal Porter, who told him that ICE had acquired all of the necessary travel documents, including a plane ticket to Cameroon, and that he would be deported on June 16 or 17.  According to Mr. Nken, Ms. Porter told him that he was being deported as a direct result of violating his ISAP supervision requirements


Lynsay Gott
Equal Justice Works Fellow and
Refugee Project Associate
World Organization for Human Rights USA
2029 P Street NW, Suite 301
Washington, DC 20036


State of _District of Columbia_

County of _____

The foregoing instrument was acknowledged before me by _Lynsay Gott_, this ___19th___ day of ___June___, 2008.

Witness my hand and official seal.

Theona Prince
Notary Public, District of Columbia
My Commission Expires 2-28-2010

_____
Notary Public

My commission expires: _____

**Attachment B**

**Affidavit of Julie Larson**

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| IN RE | \* | |
| | \* | |
| JEAN MARC NKEN | \* | AFFIDAVIT OF JULIE LARSON |
| | \* | in connection with |
| A#: 95223548 | \* | Petition for Habeas Corpus |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT

I, Julie Larson, swear and affirm that I am working as a summer intern at the

World Organization for Human Rights USA, and I am a third year law student at the

University of Kansas Law School. Jean Marc Nken, a national and citizen of Cameroon,

made a collect call to our office at approximately 11:15 a.m. on Wednesday, June 11,

2008. I was in the office and working on the case when his call was received. In that call

he told us that just five minutes earlier that morning, Immigration Officer Crystal Porter

informed him that travel arrangements for his deportation had been completed and that he

would be deported to Cameroon on a flight on either Monday or Tuesday, June 16 or 17.

Ms. Porter told Mr. Nken that her supervisor Mr. Boekana (spelling unclear) had

informed her that the Petitioner had violated the reporting terms of the Intensive

Supervision Appearance Program ("ISAP") and that these problems with ISAP were the

basis for his recent arrest and detention by ICE, and for his imminent deportation.

I declare that the foregoing is true and correct to the best of my knowledge.

Signed and sworn to before a Notary on this 12th day of June 2008 in Washington DC by:

Julie Larson
Human Rights USA
2020 P Street NW, Suite 301
Washington, DC 20036
Tele: (202) 296 – 5702
Fax: (202) 296 – 5704
info@humanrightsusa.org
*Legal Intern*

Subscribed and sworn to me by Julie Larson on this 12th day of June 2008, to certify which witness my hand and seal of office.

NOTARY PUBLIC

Theona Prince
Notary Public, District of Columbia
My Commission Expires 2-28-2010

My commission expires: _____

Attachment C

**Motion to Reopen Based on Changed Country Conditions**

Ronald D. Richey, Esquire
Attorney for Jean Marc NKEN
966 Hungerford Drive, Suite 8-A
Rockville, MD 20850
(301) 738-6909

NON-DETAINED RESPONDENT

MAY 0 6 2008

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE OF IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
### Falls Church, Virginia

|  |  |  |  |
|---|---|---|---|
| In the matter of | ) | | |
| | ) | | |
| Jean Marc NKEN | ) | File No.: | A95-223-548 |
| | ) | | |
| IN REMOVAL PROCEEDINGS | ) | | |

## RESPONDENT'S MOTION TO REOPEN (AND REMAND)
## BASED ON RECENTLY CHANGED COUNTRY CONDITIONS AND NEW EVIDENCE
## NOT PREVIOUSLY AVAILABLE

Respondent, Jean Marc NKEN, by and through counsel, Ronald D. Richey, hereby moves this Honorable Board of Immigration Appeals (hereinafter "Board") to reopen (and remand) removal proceedings, due to recent change in country conditions and new evidence not previously available, and for cause states:

<u>Brief Summary of Relevant Facts and Procedural History</u>

Respondent Jean Marc NKEN is a national of Cameroon.  He is married to an U.S. Citizen and they have a minor U.S. Citizen child.

On April 23, 2003, the Immigration Court issued an written opinion in which it denied Respondent NKEN's applications for political asylum, withholding of removal pursuant to INA §241(b)(3) and protection pursuant to the UNCAT.  Respondent NKEN's asylum case is based primarily on his political opposition activities and his political opinions against the dictatorship in Cameroon.

On or about May 16, 2003, Respondent NKEN, through counsel, filed a timely appeal, and, subsequently, a supporting brief with this Honorable Board seeking review of the Immigration Court's denial of his claims of relief.

On August 12, 2004, this Honorable Board remanded Respondent's NKEN's proceedings to the Immigration Court for a specific adverse credibility finding.

On March 4, 2005, the Immigration Judge, without taking any testimony and/or holding a new evidentiary hearing, denied Respondent NKEN's applications for asylum, withholding of removal and protection under the UNCAT, and made an adverse credibility finding.

On March 31, 2005, Respondent NKEN filed a timely appeal of the Immigration Court's decision and, subsequently, submitted a motion to remand his case to the Immigration Court so

that he could apply for adjustment of status based on a pending immigrant relative (I-130) petition filed on his behalf by his U.S. Citizen spouse, Brigitte Beloeck.[1]

On June 16, 2006, this Honorable Board adopted and affirmed the decision of the Immigration Court. Recently, the President of Cameroon for over twenty-five years, Paul Biya, announced that he would change the constitution to permit himself to be a dictator for life. This resulted in major demonstration against the government throughout Cameroon. The repressive government, however, quickly quashed the protests and began rounding up any militants or suspects, including Respondent's brother. (See attached documentation, Exhibits BB, CC and DD.)

<u>**ARGUMENT**</u>

This motion to reopen should be granted pursuant to INA §240(c)(7) and 8 C.F.R. §1003.2. The motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA §240(c)(7)(B). "A motion to reopen shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. §1003.2(c)(1).

The present motion is not barred by time and/or numerical limitations, because it is based on **changed county conditions**.

In addition, the new evidence that Respondent NKEN offers is material because it impacts on his credibility and claims for relief, which is determinative in his removal proceedings. Moreover, the enclosures provide new factual evidence based on ecent events supporting Respondent's well-founded fear of future persecution if removed to Cameroon.

---

[1] After a long delay, the USCIS approved the I-130 Petition on August 22, 2006. (A copy of the I-130 Approval Notice is attached hereto and made a part hereof as Exhibit AA.)

Further, this offered material evidence was not available at the time of the former hearing(s). Notably, this offered evidence describes recent significant new political events in Cameroon.

Specifically, Respondent NKEN presents herewith three significant diverse sets of documents. First, a detailed original letter (with English translation) from Respondent's younger brother, Lucien Nounga, (and the original envelope). (The letter is attached hereto and made a part hereof as Exhibit BB.) This letter is dated March 18, 2008. The letter describes the recent political unrest in Cameroon caused primarily by President Biya's recent decision to change the constitution of Cameroon to allow him to be president for life, the regime's brutal response, and the recent arrest and detention of Respondent's younger brother. Without a doubt, in any country (especially a so called "democracy" like Cameroon), the changing of the country's constitution to permit the President (of 25 years) to stay in power for life would be considered of such significance to qualify as a change in country conditions. In other words, Paul Biya would do away with elections and the rights of its citizenry to change the government. This would amount to a fundamental change in the government and rights of the citizens of Cameroon. (Our American founding fathers would have found such a tyrannical idea to be totally contrary to the principles of freedom and democracy and reason for revolution.)

Second, Mr. NKEN presents herewith four (4) recent photographs of him and other activists during a political demonstration for "Democracy in Cameroon" in front of the Embassy of Cameroon. (These photographs are attached hereto and made a part hereof as Exhibit CC.) This demonstration was a prompt response to recent arrests, detentions, torture and killings in Cameroon orchestrated by the dictatorial regime of Paul Biya.

Third, Mr. NKEN presents herewith nine recent news-article from the internet regarding

the current political situation in Cameroon and showing that the situation in Cameroon is not safe at all and is likely to become worse in the near future since the Biya regime moves to consolidate power and control. including brutal repression of critics like the Respondent. (These news-articles are attached hereto and made a part hereof as Exhibit DD.)

Therefore. this a recent and a subsequent development to this Board's last decision. Further. this evidence is material and significant because. inter alia. it corroborates Respondent's fear of persecution and/or torture by the brutal regime in Cameroon. Specifically. the recent changed country conditions and arrests and killings occurring in Cameroon confirm that the police in Cameroon would likely arrest and torture Respondent NKEN. if he returns to Cameroon. This evidence supports his fear of future persecution and confirms his credibility.

Furthermore. in the interests of justice and fairness. this Honorable Board should reopen (and remand) its prior "Decision and Order" and allow Mr. NKEN to present the offered new evidence. to the immigration court. that is material to his claims of relief. Significantly. this Honorable Board may "take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case." 8 C.F.R. §1003.1(d)(ii). Additionally. this Honorable Board has discretionary equitable powers to serve the interests of justice. See generally *Matter of G-D-*. 22 I&N Dec. 1132 (BIA 1999) (stating that as long as the Board has jurisdiction. its "discretionary powers are not limited. restricted. or qualified.")

WHEREFORE. for the foregoing reasons and in the interests of fairness and justice. Respondent NKEN respectfully moves this Honorable Board to grant his claim for political asylum. or remand his removal proceedings back to the immigration court in order that he may be permitted to present new material evidence relating to his meritorious applications for asylum.

5

withholding of removal and/or protection under the CAT.

Respectfully submitted.

Ronald D. Richey
Attorney for Respondent
966 Hungerford Drive, Suite 8A
Rockville, MD 20850
(301) 738-6909901

## List of Attachments

| | | |
|---|---|---|
| 1. | Affidavit of Lynsay Gott | Attachment A |
| 2. | Affidavit of Julie Larson | Attachment B |
| 3. | Motion to Reopen Based on Changed Country Conditions | Attachment C |
| 4. | Approval Notice for I-130 Petition for Relative Visa | Attachment D |
| 5. | Decision of the Fourth Circuit Court of Appeals | Attachment E |
| 6. | Decision of the Board of Immigration Appeals | Attachment F |

**Attachment A**

**Affidavit of Lynsay Gott**

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
*****************************************************************************
In Re                     *
                          *
Jean Marc Nken            *    AFFIDAVIT OF LYNSAY GOTT
                          *    in Connection with Petition for Habeas Corpus
A# 95223548               *
*****************************************************************************
```

## AFFIDAVIT

1.  I, Lynsay Gott, swear and affirm that I am attorney in good standing with the Maryland Court of Appeals. I work with Morton Sklar (DC Bar # 144139) at the World Organization for Human Rights USA in Washington, DC as an Equal Justice Works Fellow dealing with refugee cases.

2.  The facts presented in this habeas petition were related to me by the Petitioner, Jean Marc Nken, and his immigration attorney, Ronald Richey.

3.  I first spoke to Mr. Nken and his attorney in November of 2007. Mr. Nken explained his situation, including his daily reporting requirement under ISAP. At the time I was compiling information on abuses of authority by Immigration and Customs Enforcement regarding aliens in supervision programs.

4.  Mr. Nken contacted me on May 13, 2008 when he no longer had the funds to commute to Baltimore. He told me that he had reported to his ISAP case manager over the phone, and that the case manager told him to continue to report telephonically.

5.  Despite the ISAP case manager's assurances to Mr. Nken, on May 22, 2008 Mr. Nken told me that his case manager informed him he had been removed from the program and that ICE officials were looking for him to arrest and deport him.

6.  Mr. Nken called my office on May 30, 2008 after his arrest by ICE officials. On June 2, 2008 I visited Mr. Nken at the Howard County Detention Center where he retained me and Mr. Sklar as counsel. I then spoke with the ICE official in possession of Mr. Nken's file, Diona Ellis, at ICE offices in Baltimore. Ms. Ellis informed me that ICE was actively seeking to deport Mr. Nken as soon as possible. She said that they were in the process of arranging Mr. Nken's travel documents, and since ICE was already in custody of Mr. Nken's passport that process would be completed quickly. Ms. Ellis also informed me that Mr. Nken had been arrested and was now facing deportation because of his alleged violation of his ISAP supervision requirements.

7.    Mr. Nken called me at my office on the afternoon of June 11, 2008 to say that he had been contacted by an ICE official, Crystal Porter, who told him that ICE had acquired all of the necessary travel documents, including a plane ticket to Cameroon, and that he would be deported on June 16 or 17.  According to Mr. Nken, Ms. Porter told him that he was being deported as a direct result of violating his ISAP supervision requirements

_____

Lynsay Gott
Equal Justice Works Fellow and
Refugee Project Associate
World Organization for Human Rights USA
2029 P Street NW, Suite 301
Washington, DC 20036

State of _District of Columbia_

County of _____

   The foregoing instrument was acknowledged before me by _Lynsay Gott_, this ___12th___ day of ___June___, 2008.

Witness my hand and official seal.

Theona Prince
Notary Public, District of Columbia
My Commission Expires 2-28-2010

_____
Notary Public

My commission expires: _____

**Attachment B**

**Affidavit of Julie Larson**

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| IN RE | \* | |
| | \* | |
| JEAN MARC NKEN | \* | AFFIDAVIT OF JULIE LARSON |
| | \* | in connection with |
| A#: 95223548 | \* | Petition for Habeas Corpus |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### AFFIDAVIT

I, Julie Larson, swear and affirm that I am working as a summer intern at the World Organization for Human Rights USA, and I am a third year law student at the University of Kansas Law School. Jean Marc Nken, a national and citizen of Cameroon, made a collect call to our office at approximately 11:15 a.m. on Wednesday, June 11, 2008. I was in the office and working on the case when his call was received. In that call he told us that just five minutes earlier that morning, Immigration Officer Crystal Porter informed him that travel arrangements for his deportation had been completed and that he would be deported to Cameroon on a flight on either Monday or Tuesday, June 16 or 17. Ms. Porter told Mr. Nken that her supervisor Mr. Boekana (spelling unclear) had informed her that the Petitioner had violated the reporting terms of the Intensive Supervision Appearance Program ("ISAP") and that these problems with ISAP were the basis for his recent arrest and detention by ICE, and for his imminent deportation.

I declare that the foregoing is true and correct to the best of my knowledge.

Signed and sworn to before a Notary on this 12th day of June 2008 in Washington DC by:

*Julie Larson*

Julie Larson
Human Rights USA
2020 P Street NW, Suite 301
Washington, DC 20036
Tele: (202) 296 – 5702
Fax: (202) 296 – 5704
info@humanrightsusa.org
*Legal Intern*

Subscribed and sworn to me by Julie Larson on this 12th day of June 2008, to certify which witness my hand and seal of office.

NOTARY PUBLIC

Theona Prince
Notary Public, District of Columbia
My Commission Expires 2-28-2010

My commission expires: _____

**Attachment C**

**Motion to Reopen Based on Changed Country Conditions**

Ronald D. Richey, Esquire
Attorney for Jean Marc NKEN
966 Hungerford Drive, Suite 8-A
Rockville, MD 20850
(301) 738-6909

NON-DETAINED RESPONDENT

MAY 0 6 2008

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE OF IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS
### Falls Church, Virginia

| | |
|---|---|
| In the matter of | ) )<br>)<br>)<br>)<br>) |
| Jean Marc NKEN | )<br>)     File No.:    A95-223-548<br>)<br>)<br>)<br>) |
| IN REMOVAL PROCEEDINGS | )<br>)<br>) |

## RESPONDENT'S MOTION TO REOPEN (AND REMAND)
## BASED ON RECENTLY CHANGED COUNTRY CONDITIONS AND NEW EVIDENCE
## NOT PREVIOUSLY AVAILABLE

Respondent. Jean Marc NKEN, by and through counsel. Ronald D. Richey, hereby moves this Honorable Board of Immigration Appeals (hereinafter "Board") to reopen (and remand) removal proceedings. due to recent change in country conditions and new evidence not previously available, and for cause states:

<u>Brief Summary of Relevant Facts and Procedural History</u>

Respondent Jean Marc NKEN is a national of Cameroon.  He is married to an U.S. Citizen and they have a minor U.S. Citizen child.

On April 23, 2003, the Immigration Court issued an written opinion in which it denied Respondent NKEN's applications for political asylum. withholding of removal pursuant to INA §241(b) (3) and protection pursuant to the UNCAT.  Respondent NKEN's asylum case is based primarily on his political opposition activities and his political opinions against the dictatorship in Cameroon.

On or about May 16, 2003, Respondent NKEN, through counsel, filed a timely appeal, and, subsequently, a supporting brief with this Honorable Board seeking review of the Immigration Court's denial of his claims of relief.

On August 12, 2004, this Honorable Board remanded Respondent's NKEN's proceedings to the Immigration Court for a specific adverse credibility finding.

On March 4, 2005, the Immigration Judge, without taking any testimony and/or holding a new evidentiary hearing, denied Respondent NKEN's applications for asylum, withholding of removal and protection under the UNCAT, and made an adverse credibility finding.

On March 31, 2005, Respondent NKEN filed a timely appeal of the Immigration Court's decision and, subsequently, submitted a motion to remand his case to the Immigration Court so

that he could apply for adjustment of status based on a pending immigrant relative (I-130) petition filed on his behalf by his U.S. Citizen spouse, Brigitte Beloeck.[1]

On June 16, 2006, this Honorable Board adopted and affirmed the decision of the Immigration Court. Recently, the President of Cameroon for over twenty-five years, Paul Biya, announced that he would change the constitution to permit himself to be a dictator for life. This resulted in major demonstration against the government throughout Cameroon. The repressive government, however, quickly quashed the protests and began rounding up any militants or suspects, including Respondent's brother. (See attached documentation. Exhibits BB, CC and DD.)

<u>ARGUMENT</u>

This motion to reopen should be granted pursuant to INA §240(c)(7) and 8 C.F.R. §1003.2. The motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA §240(c)(7)(B). "A motion to reopen shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. §1003.2(c)(1).

The present motion is not barred by time and/or numerical limitations, because it is based on **changed county conditions**.

In addition, the new evidence that Respondent NKEN offers is material because it impacts on his credibility and claims for relief, which is determinative in his removal proceedings. Moreover, the enclosures provide new factual evidence based on ecent events supporting Respondent's well-founded fear of future persecution if removed to Cameroon.

---

[1] After a long delay, the USCIS approved the I-130 Petition on August 22, 2006. (A copy of the I-130 Approval Notice is attached hereto and made a part hereof as Exhibit AA.)

Further, this offered material evidence was not available at the time of the former hearing(s). Notably, this offered evidence describes recent significant new political events in Cameroon.

Specifically, Respondent NKEN presents herewith three significant diverse sets of documents. First, a detailed original letter (with English translation) from Respondent's younger brother, Lucien Nounga, (and the original envelope). (The letter is attached hereto and made a part hereof as Exhibit BB.) This letter is dated March 18, 2008. The letter describes the recent political unrest in Cameroon caused primarily by President Biya's recent decision to change the constitution of Cameroon to allow him to be president for life, the regime's brutal response, and the recent arrest and detention of Respondent's younger brother. Without a doubt, in any country (especially a so called "democracy" like Cameroon), the changing of the country's constitution to permit the President (of 25 years) to stay in power for life would be considered of such significance to qualify as a change in country conditions. In other words, Paul Biya would do away with elections and the rights of its citizenry to change the government. This would amount to a fundamental change in the government and rights of the citizens of Cameroon. (Our American founding fathers would have found such a tyrannical idea to be totally contrary to the principles of freedom and democracy and reason for revolution.)

Second, Mr. NKEN presents herewith four (4) recent photographs of him and other activists during a political demonstration for "Democracy in Cameroon" in front of the Embassy of Cameroon. (These photographs are attached hereto and made a part hereof as Exhibit CC.) This demonstration was a prompt response to recent arrests, detentions, torture and killings in Cameroon orchestrated by the dictatorial regime of Paul Biya.

Third, Mr. NKEN presents herewith nine recent news-article from the internet regarding

4

the current political situation in Cameroon and showing that the situation in Cameroon is not safe at all and is likely to become worse in the near future since the Biya regime moves to consolidate power and control, including brutal repression of critics like the Respondent. (These news-articles are attached hereto and made a part hereof as Exhibit DD.)

Therefore, this a recent and a subsequent development to this Board's last decision. Further, this evidence is material and significant because, inter alia, it corroborates Respondent's fear of persecution and/or torture by the brutal regime in Cameroon. Specifically, the recent changed country conditions and arrests and killings occurring in Cameroon confirm that the police in Cameroon would likely arrest and torture Respondent NKEN, if he returns to Cameroon. This evidence supports his fear of future persecution and confirms his credibility.

Furthermore, in the interests of justice and fairness, this Honorable Board should reopen (and remand) its prior "Decision and Order" and allow Mr. NKEN to present the offered new evidence, to the immigration court, that is material to his claims of relief. Significantly, this Honorable Board may "take any action consistent with their authorities under the Act and the regulations as is appropriate and necessary for the disposition of the case." 8 C.F.R. §1003.1(d)(ii). Additionally, this Honorable Board has discretionary equitable powers to serve the interests of justice. See generally *Matter of G-D-*, 22 I&N Dec. 1132 (BIA 1999) (stating that as long as the Board has jurisdiction, its "discretionary powers are not limited, restricted, or qualified.")

WHEREFORE, for the foregoing reasons and in the interests of fairness and justice, Respondent NKEN respectfully moves this Honorable Board to grant his claim for political asylum, or remand his removal proceedings back to the immigration court in order that he may be permitted to present new material evidence relating to his meritorious applications for asylum,

withholding of removal and/or protection under the CAT.

Respectfully submitted.

Ronald D. Richey
Attorney for Respondent
966 Hungerford Drive, Suite 8A
Rockville, MD 20850
(301) 738-6909901

**Attachment D**

**I-130 Petition for Relative Visa Approval Notice**

| Receipt Number: | | Case Type | I-130, Petition for Alien Relative |
|---|---|---|---|
| EAC-05-034-52155 | | | |

| Receipt Date | Priority Date: | Petitioner/Applicant: |
|---|---|---|
| November 17, 2004 | November 17, 2004 | Brigitte Beloeck |

| Notice Date | Page | Beneficiary: A79 399 273 |
|---|---|---|
| August 22, 2006 | Page 1 of 1 | Jean Marc Nken |

**Notice Type:** Approval Notice

Spouse of an LPR

Brigitte Beloeck
1836 Metzerott Road Apt 1508
Adelphi, MD 20783

The above petition/application has been approved.
*(La solicitud o petición arriba mencionada ha sido aprobada.)*

The disposition of the petition/application is noted below:  *(La disposición de la petición/solicitud se nota a continuación):*

The approved visa petition/application was sent to the American Consulate in :
*La aprobada petición/solicitud de visa fue enviada al Consulado Norteamericano en:*
All future correspondence relating to that petition or application must be directed to that Consulate.
*Toda la correspondencia futura relacionada a esa petición o solicituddebe ser dirigida al Consulado.*

The approved petition/application was transferred to this CIS office:
*La aprobada petición/solicitud fue transferida a esta oficina de CIS :*
All future correspondence relating to that petition or application must be directed to that Office.
*Toda la correspondencia futura relacionada a esa petición o solicitud debe ser dirigida al esta oficina.*

The approved visa petition was sent to the State Department's National Visa Center (NVC), 32 Rochester Avenue, Portsmouth, NH 03801-2909
*La aprobada petición de visa fue enviada al Centro Nacional de Visa del Departamento del Estado (NVC). localizado en 32 Rochester Avenue, Portsmouth, NH 03801-2909.*
All future correspondence relating to that petition or application must be directed to the NVC..
*Toda la correspondencia futura relacionada a esa petición o solicitud debe ser dirigida al NVC.*

✓ The approved visa petition or application is has been retained by this office.
*La aprobada petición/solicitud ha sido retenida por esta oficina de CIS :*

cc:  Juan Washington
2730 University Blvd. West, Ste 500
Wheaton MD 20902-1975

Please see additional information on the back.  You will be notified separately about any other cases you filed.

**U.S. Citizenship and Immigration Services**
**BALTIMORE DISTRICT OFFICE**
**31 HOPKINS PLAZA, FALLON FEDERAL BUILDING**
**BALTIMORE, MARYLAND 21201**


EAC0503452155

Customer Service Telephone  1-800-375-5283

**Attachment E**

**Decision of the Fourth Circuit Court of Appeals**

Westlaw

227 Fed.Appx. 265                    FOR EDUCATIONAL USE ONLY                         Page 1
227 Fed.Appx. 265, 2007 WL 1037391 (C.A.4)
**(Cite as: 227 Fed.Appx. 265, 2007 WL 1037391 (C.A.4))**

※**Nken** v. Gonzales
C.A.4,2007.
This case was not selected for publication in the
Federal Reporter.Not for Publication in West's
Federal Reporter See Fed. Rule of Appellate
Procedure 32.1 generally governing citation of
judicial decisions issued on or after Jan. 1, 2007.
See also Fourth Circuit Rule 32.1 (Find CTA4 Rule
32.1)

United States Court of Appeals,Fourth Circuit.
Jean Marc NKEN, Petitioner,
v.
Alberto R. GONZALES, U.S. Attorney General,
Respondent.
No. 06-1784.

Submitted: Feb. 21, 2007.
Decided: April 3, 2007.

**Background:** Alien filed petition for review of order
of Board of Immigration Appeals (BIA) that
dismissed appeal from immigration judge's denial of
application for asylum, for withholding of removal,
and for relief under Convention Against Torture
(CAT).

**Holding:** The Court of Appeals held that BIA's
denial of alien's motion to file brief out-of-time was
not abuse of discretion.
Petition for review denied.

West Headnotes

Aliens, Immigration, and        Citizenship        24
☞353(1)

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(E) Administrative Procedure
      24k351 Administrative Review
        24k353 Time Limitations
          24k353(1) k. In General. Most Cited
Cases
Board of Immigration Appeals' denial of alien's
motion to file brief out-of-time on review from denial
of applications for asylum, withholding of removal,

and relief under Convention Against Torture (CAT)
was not abuse of discretion; alien failed to show that
visa was immediately available, and government
opposed motion.

*265 On Petition for Review of an Order of the
Board of Immigration Appeals. (A95-223-548).
Ronald D. Richey, Law Office of Ronald D. Richey,
Rockville, Maryland, for Petitioner. Peter D. Keisler,
Assistant Attorney General; M. JocelynLopez
Wright, Assistant Director; Kathryn L. Moore, Office
of Immigration Litigation, United States Department
of Justice, Washington, D.C., for Respondent.

Before WILLIAMS, MICHAEL, and KING, Circuit
Judges.

Petition denied by unpublished PER CURIAM
opinion.
Unpublished opinions are not binding precedent in
this circuit.PER CURIAM:
**1 Jean Marc Nken, a native and citizen of
Cameroon, petitions for review of an order of the
Board of Immigration Appeals ("Board") dismissing
his appeal from the immigration judge's order
denying his applications for asylum, withholding
from removal and withholding under the Convention
Against Torture ("CAT"). He also seeks review of
the denial of his motion to remand. We deny the
petition for review.

The Immigration and Naturalization Act (INA)
authorizes the Attorney General to confer asylum on
any refugee. 8 U.S.C. § 1158(a) (2000). The INA
defines a refugee as a person unwilling or unable to
return to his native country "because of persecution
or a well-founded fear of persecution on account of
race, religion, nationality, membership in a particular
social group, or political opinion." 8 U.S.C. §
1101(a)(42)(A) (2000). An applicant can *266
establish refugee status based on past persecution in
his native country on account of a protected ground.
8 C.F.R. § 1208.13(b)(1) (2006). Without regard to
past persecution, an alien can establish a well-
founded fear of persecution on a protected ground.
Ngarurih v. Ashcroft, 371 F.3d 182, 187 (4th
Cir.2004).

227 Fed.Appx. 265    FOR EDUCATIONAL USE ONLY    Page 2
227 Fed.Appx. 265, 2007 WL 1037391 (C.A.4)
(Cite as: 227 Fed.Appx. 265, 2007 WL 1037391 (C.A.4))

An applicant has the burden of demonstrating his eligibility for asylum. 8 C.F.R. § 1208.13(a) (2006); *Gandziami-Mickhou v. Gonzales,* 445 F.3d 351, 353 (4th Cir.2006). A determination regarding eligibility for asylum is affirmed if supported by substantial evidence on the record considered as a whole. *INS v. Elias-Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). This court will reverse the Board "only if the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Rusu v. INS,* 296 F.3d 316, 325 n. 14 (4th Cir.2002) (internal quotation marks and citations omitted).

We conclude that substantial evidence supports both the immigration judge's adverse credibility finding and its ultimate findings that Nken is ineligible for asylum, withholding of removal, and protection under the CAT. Accordingly, we will not disturb the Board's final order affirming the immigration judge's decision.

We also conclude the Board did not abuse its discretion denying Nken's motion to file a brief out of time. With respect to the motion to remand, because Nken did not show that a visa was immediately available to him and the Government opposed the motion, we find the Board did not abuse its discretion denying the motion. *See* 8 U.S.C. § 1255(a) (2000); *Onyeme v. INS,* 146 F.3d 227, 231 (4th Cir.1998); *Matter of Velarde-Pacheco,* 23 I. & N. Dec. 253 (B.I.A.2002).

Accordingly, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*PETITION DENIED.*

C.A.4,2007.
Nken v. Gonzales
227 Fed.Appx. 265, 2007 WL 1037391 (C.A.4)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Attachment F**

**Decision of the Board of Immigration Appeals**



U.S. Department of Justice

Office of the Immigration Review

Washington, Juan O. Espina                    Office of the District Counsel/BA
Hungerford Drive                              31 Hopkins Plaza, 7th Floor
Suite 8-B                                     Baltimore, MD 21201
Rockville, MD 20850-4000

ALIEN, JESSE MARC                             A99-281-547

Date of this Order

this order in the above entitled matter

HEARING, that the ORDER
OF THE COURT

U.S. Department of Justice                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A95 223 548 - Baltimore                     Date:

In re:  JEAN MARC NKEN                                           AUG 1 2 2004

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Juan C. Washington, Esquire

ON BEHALF OF DHS:          Arthur H. Gottlieb
                           Assistant Chief Counsel

CHARGE:

    Notice:  Sec.    237(a)(1)(B), I&N Act [8 U.S.C. § 1227(a)(1)(B)] -
                     In the United States in violation of law

APPLICATION:   Asylum; withholding of removal; Convention Against Torture

ORDER:

    PER CURIAM. The respondent appeals from the Immigration Judge's April 23, 2003, denial of his
applications for asylum and withholding of removal pursuant to sections 208(a) and 241(b)(3) of the
Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231(b)(3), and for protection under the
Convention Against Torture. See 8 C.F.R. §§ 1208.16(c), 1208.18. On appeal, the respondent contends
that the Immigration Judge erred by denying him relief. The Immigration Judge raised numerous problems
relating to the respondent's credibility and her ultimate conclusion finding the respondent to be ineligible
for relief appears to be based largely on the credibility problems. We observe, however, that the
Immigration Judge did not make a specific adverse credibility finding in this instance. Under our standard
of factual review, we cannot make a *de novo* determination of credibility on appeal. See 8 C.F.R.
§§ 1003.1(d)(3)(i), (ii). Consequently, the record is remanded to the Immigration Court to make a
specific credibility finding in accordance with the standards articulated by the Board.


                           _____
                           FOR THE BOARD

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Baltimore, Maryland

File A 95 223 548                                    April 23, 2003

In the Matter of

JEAN MARC NKEN,                           )              IN REMOVAL PROCEEDINGS
                                          )
        Respondent                        )

CHARGE:         Section 237(a)(1)(B) of the Immigration and
                Nationality Act - remained in the United States
                for longer time than permitted

APPLICATIONS:   Section 208A of the Immigration and Nationality
                Act, asylum; Section 241(b)(3) of the Immigration
                and Nationality Act, withholding of removal;
                withholding of removal under the U. N. Convention
                Against Torture and other Forms of Cruel, Inhuman,
                or Degrading Treatment or Punishment (Torture
                Convention)

ON BEHALF OF THE RESPONDENT:              ON BEHALF OF THE GOVERNMENT:

Mr. Juan C. Washington, Esquire           Mr. Arthur Gottlieb
966 Hungerford Drive, Suite 33            Assistant District Counsel
Rockville, Maryland 20850                 Baltimore, Maryland


                ORAL DECISION OF THE IMMIGRATION JUDGE

        The respondent is a native and citizen of Cameroon who
was admitted to the United States at Miami, Florida on or
about April 1, 2001 as a non-immigrant, C-4 (transit), with
authorization to remain in the United States for a temporary
period not to exceed April 6th, 2001. He remained thereafter
without authorization from the Immigration and Naturalization

Service (now known as the Department of Homeland Security).

On or about February 12th, 2002 he was served with a Notice to Appear by the INS, see Exhibit 1   in the NTA, the INS charges the respondent with being removable as set forth above. At a master calendar proceeding the respondent admitted the factual allegations contained in the Notice to Appear and conceded his removability from the United States. He did not designate a country of removal should that become necessary. The Court designated Cameroon. Based on the respondent's concession of removability, this Court does find that his removability has been established by clear and convincing evidence in accordance with Section 240 of the Act.

On or about December 13th, 2001, the respondent filed an asylum application, Form I-589, with the INS. This application was subsequently referred to the Immigration Court by the INS pursuant to 8 C.F.R. Section 208.14. The I-589 and the documentation attached thereto, including the respondent's affidavit, has been marked into evidence as Group Exhibit 2  The respondent is seeking asylum from Cameroon based on his testimony that on account of his opposition activities, he was arrested and detained on two different occasions in Cameroon. He fears returning to that country at the present time. His application for asylum is also deemed to be an application for withholding of removal pursuant to Section 241(b)(3) of the Act and withholding under the Torture Convention.

r

had been deported, he stated that he was not quite sure what happened. He simply appeared before someone _____ not a judge, and he was given permission to _____ _____ ____ arrival in the United States in April of 2001. He stated that in April of 2001, he did not return to Cameroon because he had "enormous problem" in ___ country and his life would be in danger if he re_____ s. ____ sta___ that he was arrested on two different occasions in _ameroon on account of his anti-government activit_.

His first arrest occurred in _ctober of 1990. He stated that at this time, he was a student at the University of Yaounde and a member of a student organization which was the forerunner to what was later known as Parliament. He stated that he was arrested while participating in a demonstrati___ a student demonstration, against the gov_____. The purpo___ of the mar_l was to protest against the government's refusal to permit free speech and democracy in that country. The respondent stated that he was an influential member of this particular organization. He was questioned by the Government with reference to a letter from a friend of his, at tab I, which sta___ that the respondent was a secretary general of this particular organization, as well as being a propaganda delegate. The respondent stated that this letter was incorrect insofar as it states that he was a secretary general. He was merely a propaganda delegate. Additionally, his updated affidavit advises that he was instrumental in organizing

this march, whereas his first affidavit attached to his asylum application, makes no mention of any leadership role in this student organization or any involvement in the planning of this march. He stated that his first attorney was not very helpful in preparing this particular application, hence, the lack of detail in the first affidavit.

He stated that while participating in this march, the police descended on the marchers, threw water on them, and chased them with batons. More than a 1,000 people were participating in the demonstration. The respondent stated that he was in fact arrested and brought to a nearby police station. He was kept there for a few hours and then brought to another location known as the Americana prison in Yaounde. He was detained at this prison for approximately one month. He was interrogated frequently and beaten frequently when he did not respond in a manner satisfactory to his captors. He was questioned about his ethnicity, his family, and about who was behind this particular student organization. He stated that, as mentioned above, he was beaten on several different occasions and could not recall exactly how many times he was beaten.

He stated that he was simply released one day when two guards came to his cell, told him to get dressed, and then drove him to the downtown Yaounde where they simply let him go. He stated that he stopped a taxi who brought him to the home in Yaounde, where he had been living with his brother, Lucia. His

active member of this organization and he then, from 1994 to 1997, became the general secretary. His responsibilities as general secretary were to organize meetings, find meeting locations, and to keep notes and important documentation.

He stated that this particular student organization participated in three sit-in type situations at the Cameroonian Embassy in Cameroon. The first occurred in 1993. The purpose of this sit-in was to try to ameliorate the students in Cameroon who were being mistreated. He stated that as a result of this sit-in, he and others were arrested by the Ivory Coast police and detained for a few days. In June of 1997, the students presented a petition to the Cameroonian Embassy. They had received a report that the legislative elections of May had been fraudulent. They were petitioning for their elections. The third sit-in at the Cameroonian Embassy in the Ivory Coast occurred in October of 1997, a week before the upcoming presidential elections. The purpose of bringing a petition to the Cameroonian Embassy was to petition for fair elections in that country.

He stated that he left the Ivory Coast in December of 2000. There was a coup d'etat in the Ivory Coast and security was rampant. Foreigners were no longer regarded kindly. He was harassed and thus he felt he needed to leave Cameroon. He therefore contacted his father who told him to return to Cameroon. He stated that this was the first time that he

language.

He was questioned with reference to a letter, to be located at tab M, the author residing in Silver Spring, Maryland. He stated that this individual was not a witness because he was perhaps too frightened to appear.

He was questioned by the Government as to how he supported himself in the Ivory Coast from January of 1981 to July of 2000 while he was studying. He stated that he supported himself through the student union and at times his father helped him. It was then pointed out to him by the Government that he had a pay slip from Africare dated 1995 with an annual salary. He stated that this was a paid internship and when he stated that he was supported through students and his father, he was referring only to before 1995.

## STATEMENT OF THE LAW

The respondent bears the evidentiary burdens of proof and persuasion in any application for withholding of removal under Section 241(b)(3) or asylum under Section 208 of the Act. Matter of Acosta, 19 I&N Dec. 211 (BIA 1985), modified, Matter of Mogharrabi, 19 I&N Dec. 439 (BIA 1987).

An alien seeking asylum in the United States bears the burden of establishing that he or she meets the refugee definition of Section 101(a)(42)(a) of the Act. Matter of S-P-, Int. Dec. 3287 (BIA 1996). Meeting this burden, the respondent must demonstrate that he or she has suffered past persecution on

account of race, religion, nationality, membership in a particular social group, or political opinion and must satisfy the well-founded fear standard of eligibility required for asylum under Section 208 of the Act. See INS v. Cardoza-Fonseca, 480 U.S. 421 (1987).

To satisfy the well-founded fear standard, the respondent must show that a reasonable person in his circumstances would fear persecution. Matter of Mogharrabi, Int. Dec. 3078 (BIA 1986).

To be eligible for withholding of removal pursuant to Section 241(b)(3) of the Act, an alien's facts must show a clear probability of persecution in the country designated for removal on account of race, religion, nationality, membership in a particular social group, or political opinion. INS v. Stevic, 467 U.S. 407 (1984).

To be eligible for relief under the Torture Convention, an alien must show that it is "more likely than not" that he or she would be tortured if removed to the proposed country of removal. See 8 C.F.R. Section 208.16(c).

ANALYSIS

Based on the totality of evidence, this Court must find that the respondent has failed to meet his burden in establishing past persecution or that he has a well-founded fear of future persecution should he return to Cameroon at the present time. In light of this finding, this Court need not and will not address

the issue of respondent's firm resettlement in the Ivory Coast.

1.    At the outset, this Court finds implausible respondent's actions in allegedly fleeing from Cameroon in 1990. He stated that he was fleeing for his life, yet this Court finds it curious that upon reaching a safe haven in Cameroon he did not apply for asylum in that country. He has produced no evidence that he could not do so. Moreover, the Court finds it very curious that the respondent could enter the Ivory Coast and almost immediately apply for and be accepted to the university in that country despite being a foreigner. In sum, this Court queries whether or not the respondent had indeed applied to school in the Ivory Coast being leaving to Cameroon and indeed proceeded to the Ivory Coast for the purpose of going to school.

2.    With reference to political activities in Cameroon in 1990, this Court notes the letter from respondent's friend at the L, which, in sum, states that the respondent was secretary general of a student organization in Cameroon in addition to being a propaganda delegate. The respondent stated that he was never the secretary general of the student organization. This Court questions the basis for this author's statement.

3.    This Court notes that respondent's original asylum application makes no mention of having any leadership role in the student organization despite his testimony today that he was a propaganda delegate. His original application makes no mention of his having helped the organization plan the 1990

demonstration, which resulted in his arrest.  This Court notes
that he was assisted by an attorney with his original
application.

4.    This Court notes the following:  Respondent
testified that upon his release from prison in 1990 in Cameroon,
he went to his home in Yaounde where he and his brother had lived
together.  His brother paid for his taxi.  He then went to his
father's home in Douala, 300 kilometers away, traveling by a bus.
His updated affidavit states that he immediately went to his
father's home where his brother was waiting, and the brother paid
for the taxi.

This Court further questions how after having been
detained for a month and having been beaten in the manner in
which he so described, the respondent was able physically to take
a 300 kilometer bus trip.

5.    This Court notes the incorrect English in the
summons that respondent stated was issued against him in
Cameroon, i.e. the use of the word "table" for presumably the
word "abide"; the use of the phrase "holding and identification"
supposedly instead of "holding an identification" and finally,
"you shall be forced to come with extra punishment" a phrase,
which quite frankly, makes no sense.

This Court notes that this summons, an official
government document, has not been authenticated pursuant to 8
C.F.R. 287.6 and this Court gives it diminimis weight.

6.    This Court notes respondent's vagueness and evasiveness when questioned by the Government as to how he supported himself for 10 years in the Ivory Coast.  He stated initially, when questioned by the Government as to how he supported himself between 1991 and 2000, that he was supported with the assistance of the student union and occasionally his father.  It was only when it was pointed out to him that he had presented a pay slip from Afriaare showing an annual salary, that he then stated, oh yes, after 1995 he was involved in a paid internship.  Indeed respondent's evasiveness in answering this question leads this Court to question what exactly the respondent was doing in the Ivory Coast for 10 years.

7.    This Court further notes his evasiveness when questioned as to what happened to him in the Bahamas.  This Court seriously doubts that he would not be permitted to apply for political asylum because there were no forms available.  This Court further seriously doubts that he would be detained for one month in the Bahamas and yet not be informed as to why he was being so detained.  This Court again queries as to exactly what was respondent's situation in the Bahamas, and this Court doubts that the respondent was being totally forthcoming with the Court.

8.    This Court further finds curious, with reference to his second arrest, that the respondent, who said that he was beaten on numerous occasions while detained in Douala, would not seek medical assistance in Douala when released from prison.

Indeed he traveled 300 kilometers to Yaounde where he sought medical treatment for nose bleeding, back injuries, and abdominal pains, and apparently a balance problem. When questioned as to why this was so, the respondent stated that the primary purpose of his trip to Yaounde was not to seek medical attention. This Court therefore questions whether or not the respondent was indeed injured as he so stated while in detention and indeed whether or not he was detained as he so claims. This Court notes that the letters that he has submitted on his behalf have not been notarized and thus this Court has no way of determining their authors. Furthermore, he has presented no proof as to the relationship to his alleged father and brother who wrote letters on his behalf. Thus based on the totality of evidence, this Court does find that the respondent has failed to meet his burden in establishing past persecution or that he has a well-founded fear of future persecution should he return to Cameroon at the present time. Inasmuch as the respondent has failed to satisfy the lower burden of proof required for asylum, it follows that he has failed to satisfy the clear probability standard of eligibility for withholding of removal under INA Section 241(b)(3).

For the aforementioned reasons, this Court also finds that the respondent has failed to meet his burden in establishing that it is more likely than not that he would be tortured as contemplated by the Torture Convention were he to return to

A 95 223 548                    14                    April 23, 2003

Cameroon at the present time.  The respondent was not physically present in the United States for one year prior to service of the Notice to Appear and thus is statutorily ineligible for voluntary departure.  Accordingly, the following orders are entered.

<u>ORDERS</u>

IT IS HEREBY ORDERED that the respondent's application for asylum be denied.

IT IS HEREBY FURTHER ORDERED that the respondent's application for withholding of removal under INA Section 241(b)(3) be denied.

IT IS HEREBY FURTHER ORDERED that the respondent's application for relief under the Torture Convention be denied.

IT IS HEREBY FURTHER ORDERED that the respondent be removed and deported from the United States to Cameroon on the charge contained in the Notice to Appear.


JILL DUFRESNE
Immigration Judge