UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEAN MARC NKEN,

    Petitioner,

      v.

MICHAEL CHERTOFF, Secretary of the United States Department of Homeland Security

    Respondents.

Civil Action No.08-1010 (CKK)

**MEMORANDUM OPINION**
(June 18, 2008)

On June 13, 2008, Petitioner Jean Marc Nken filed an Emergency Petition for a Writ of Habeas Corpus, Injunctive Relief and for Stay of Removal. The Emergency Petition, which the Court received in Chambers on the morning of June 16, 2008, raises various claims and seeks various forms of relief. Most pressingly, however, the emergency portion of the Petition asks this Court to issue injunctive relief, in the form of a stay of Petitioner's removal from the United States, which is–to the Court's knowledge–currently scheduled to occur on Thursday, June 19, 2008. The Emergency Petition primarily argues that such a stay is necessary in order to allow the Board of Immigration Appeals ("BIA") to consider a currently pending motion to reopen Petitioner's asylum claim that Petitioner has filed with the BIA.

Upon receipt of the Emergency Petition, the Court held two telephonic motions hearings on the record with counsel for both parties participating, during which it heard argument on certain discrete issues regarding the Emergency Petition and the Court's jurisdiction to entertain it. As explained to counsel during those telephone calls, the Court has decided to bifurcate the

emergency portion of the Petition–i.e., the request that this Court stay Petitioner's impending removal–from the remainder of the claims and requests for relief raised in the Emergency Petition. This Memorandum Opinion addresses only Petitioner's emergency request for a stay of removal, and concludes that the Court lacks jurisdiction to issue the relief Plaintiff seeks because the Immigration and Nationality Act ("INA"), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302, vests sole authority to review final orders of removal, claims arising from actions and proceedings brought in connection with removals, and claims arising from Executive Branch decisions to execute removal orders, in the Fourth Circuit Court of Appeals.[1]

### I:  BACKGROUND

Petitioner Jean Marc Nken is a national and citizen of Cameroon, who entered the United States in April 2001. Emerg. Pet. ¶ 2, Ex. F (Immigration Judge Decision). According to the Emergency Petition, Petitioner's first application for asylum, withholding of removal and protection under the Conventional Against Torture was denied by an Immigration Judge ("IJ") on March 4, 2005. Emerg. Pet. ¶ 4.[2] Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on March 31, 2005, and also submitted a motion to remand the

---

[1] The Court does not address either its jurisdiction to entertain, or the merits of, the remaining claims included in the Emergency Petition. In the event that Petitioner decides to pursue those claims, the Court will, in the future, set a schedule for such additional briefing as may be necessary regarding those claims.

[2] Attached as Exhibit F to the Emergency Petition is a copy of an initial IJ decision denying Petitioner's application for asylum, which appears to have been subsequently supplemented with an IJ credibility determination. *See* Emerg. Pet., Ex. F (4/23/03 IJ Decision); (8/12/04 Board of Immigration Appeals Order remanding to IJ for credibility determination); *Nken v. Gonzales*, 227 Fed. Appx. 265 (4th Cir. Apr. 3, 2007).

case to the IJ in order to apply for an adjustment of status based on Petitioner's marriage to a U.S. citizen and pending I-130 application. *Id.* ¶ 4. The BIA affirmed the IJ's denial of Petitioner's asylum application and denied the motion to remand on June 16, 2006. *Id.* ¶ 5. At that time, the BIA also issued a final order of removal. *Id.*

Petitioner filed a Petition for Review with the Fourth Circuit Court of Appeals on July 14, 2006. *Id.* ¶ 5. The Fourth Circuit denied that Petitioner for Review on April 3, 2007. *Id.* ¶ 8; *Nken v. Gonzales*, 227 Fed. Appx. 265 (4th Cir. Apr. 3, 2007). During the interim, Petitioner and his wife attended an I-130 interview, at which Petitioner was arrested and placed in detention. Emerg. Pet. ¶ 6. Petitioner was then released from detention and placed in the Intensive Supervision and Appearance Program ("ISAP"), a form of supervised parole. *Id.* Also during the interim, Petitioner filed two motions to reopen the BIA's asylum proceedings based on his marriage to a U.S. citizen. Gov't Mem. on Subject Matter Jurisdiction ("Gov't Mem.") at 1 n.2. The BIA denied those motions to reopen, and the Fourth Circuit denied a Petition for Review of the BIA's denial of one of Petitioner's motions to reopen. *Nken v. Mukasey*, No. 07-1633, 2008 WL 961628 (4th Cir. Apr. 9, 2008). On May 6, 2008, Petitioner filed his third motion to reopen with the BIA, based on a claim of changed conditions in his home country of Cameroon. Emerg. Pet. ¶ 8. That motion to reopen is still pending with the BIA. *Id.*

On May 30, 2008, Petitioner was arrested and placed in detention in Maryland. *Id.* ¶ 9. According to Petitioner, he was informed on June 11, 2008 that he would be deported on June 16 or June 17, 2008, and that his removal is the result of his failure to comply with the ISAP supervised parole program. *Id.* ¶ 20. The Court has since learned, through the representations of Respondent's counsel, that Petitioner is currently scheduled to be removed on Thursday June 19,

3

2008. On June 13, 2008, Petitioner filed his Emergency Petition, which was not received in Chambers until the morning of Monday June 16, 2008. The Emergency Petition raises various legal claims and requests for relief, which are not addressed in this Memorandum Opinion because they are not of an emergent nature. In addition, however, the Emergency Petition seeks injunctive relief to stay Petitioner's impending removal, primarily in order to allow the BIA to consider and resolve Petitioner's pending motion to reopen prior to any removal. Petitioner also filed a motion directly with the BIA asking for a stay of his removal pending resolution of his motion to reopen based on a claim of changed country conditions; however, the BIA denied that motion in a Decision dated June 17, 2008.[3]

Upon receipt of the Emergency Petition, the Court held a telephonic motions hearing on the record with counsel for both parties participating on the afternoon of June 16, 2008. During that telephone call, the Court focused the parties on the emergency portion of the Petition, and heard argument on certain issues concerning that portion. The Court also set a schedule for the receipt of supplemental briefing related to jurisdiction from both parties. After receiving that supplemental briefing, on the afternoon of June 17, 2008, the Court held another telephonic motions hearing on the record with counsel for both parties participating regarding further discrete issues pertaining to the Emergency Petition.

## II: DISCUSSION

The initial issue facing the Court, and the one which the Court has focused the parties on in its telephonic motions hearings, is whether this Court has jurisdiction to grant the emergency

---

[3] The BIA's Decision denying Petitioner's application for a stay of removal states that "[a]fter consideration of all information, the [BIA] has concluded there is little likelihood that the motion [to reopen] will be granted." 6/17/08 BIA Decision.

relief Petitioner seeks–a stay of the BIA's final order of removal in order to allow the BIA to consider and resolve Petitioner's pending motion to reopen based on changed country conditions–or whether, instead, the REAL ID Act divests this Court of jurisdiction over Petitioner's request and places it in the Fourth Circuit Court of Appeals.

Section 106 of the REAL ID Act amended the INA, with the goal of "giv[ing] every alien a fair opportunity to obtain judicial review while restoring order and common sense to the judicial review process." H.R. Rep. No. 109-72 at 174 (2005). As amended by the REAL ID Act, 8 U.S.C. § 1252 clarifies "the circumstances under which and the venue in which judicial review is available in immigration cases." *Sadhavani v. Chertoff*, 460 F. Supp. 2d 114, 120-21 (D.D.C. 2006), *aff'd* 2008 WL 2185344 (May 13, 2008). Three provisions of 8 U.S.C. § 1252 are particularly relevant here. First, subsection (a)(5)–entitled "Exclusive means of review"–provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title [the mandamus statute and the All Writs Act], a petition for review filed with the appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter*, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5) (emphasis added).

Next, subsection (b)(9)–entitled "Consolidation of questions for judicial review"–provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9) (emphasis added).

Finally, subsection (g)–entitled Exclusive Jurisdiction–provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear *any cause or claim by or on behalf of an alien arising from the decision or action* by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter.

*Id.* § 1252(g) (emphasis added).

Courts addressing these provisions of § 1252 have found that they implement Congress' goal of "channeling review to the courts of appeals." H.R. Rep. No. 109-72 at 174. In particular, as the First Circuit explained in *Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007), subsection (b)(9) "was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." *Id.* at 9 (citing 8 U.S.C. § 1252(a)(5)). For its part, the Supreme Court has described subsection (b)(9) as a "general jurisdiction limitation." *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999). Further, while recognizing that subsection (g) does not apply to all "decisions or actions that may be part of the deportation process–such as the decisions to open an investigation, to surveil the suspected violator, to

reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order," the Supreme Court has nevertheless found that subsection 1252(g) applies to "three discrete actions that the [Executive Branch] may take: [a] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* In at least those situations, courts have consistently concluded that the various provisions of § 1252 divest the district courts of jurisdiction to review all questions of law and fact arising from "any action taken or proceeding brought to remove an alien from the United States," 8 U.S.C. § 1252(b)(9), as well as "any cause or claim by or on behalf of an alien arising from the decision or action . . . to . . . execute removal orders," *id.* § 1252(g).

      The Emergency Petition in this matter seeks a stay in order to avoid the execution of the BIA's final order of removal. Petitioner, however, attempts to avoid the obvious import of the REAL ID Act on this Court's jurisdiction to entertain such a claim, by arguing that his habeas petition "does not seek to challenge the legal sufficiency of the final order of removal by the Immigration Courts, but rather to raise legal and Constitutional issues associated with denial of Due Process if the Motion to Reopen process is not permitted to be completed, and the arbitrary nature of the ISAP parole supervision program . . . ." Pet.'s Suppl. Mem. on REAL ID Act Jurisdictional Issues (Pet.'s Suppl. Mem.) ¶ 4. As a result, Petitioner argues, this Court may entertain his request for a stay of the removal order, notwithstanding the REAL ID Act. *See generally id.* In support of this argument, Petitioner cites *Reno* for the proposition that "the language of 1252(g) should be very narrowly construed so as not to eliminate judicial review over matters outside of the discretion of the [Executive Branch]." *Id.* ¶ 5. As discussed above, *Reno* certainly concludes that § 1252(g) does not apply to all "decisions or actions that may be

7

part of the deportation process," however, *Reno* also explicitly finds that § 1252(g) applies to a "decision or action" to "execute removal orders," 525 U.S. at 482, which is precisely what Petitioner seeks to stay with his Emergency Petitioner.

Petitioner also argues that "the purpose of seeking a stay is simply to allow the broader constitutional issues to be considered," such that it would "misconstrue[] the purpose of the Petition to mistakenly characterize and treat [it] as challenging deportation." Pet.'s Suppl. Mem. ¶ 7. Petitioner's description of his claim overlooks the fact that the emergency relief he seeks is a stay of the BIA's final order of removal, affirmed by the Fourth Circuit, which at bottom would require this Court to review that final order.

At this point, the Court does not address the issue of whether Petitioner's claims beyond his emergency request for a stay of removal are collateral to the removal proceedings themselves, and therefore need not reach Petitioner's argument that "habeas jurisdiction remains to deal with issues not tied directly to review of removal proceedings or the results of those proceedings." *Id.* ¶ 8 (citing cases). Regardless of whether the Court may (or may not) be able to consider the other claims that Petitioner raises in his Emergency Petition, insofar as he seeks a stay of the BIA's final order of removal–which the Court notes has been upheld by the Fourth Circuit–the REAL ID Act strips this Court of jurisdiction to consider such a request.

Significantly, Judge John D. Bates faced a similar question regarding the application of the REAL ID Act in *Sadhavani v. Chertoff*, a case in which the "petitioner object[ed] to respondents' decision to execute [a] removal order . . . while his motion to reopen the removal proceedings was still pending," and argued that those "actions violated his rights under the [United States Constitution], as well as [the Geneva Convention]." 460 F. Supp. 2d at 122. In

that recently affirmed case, *see* 2008 WL 2185344, Judge Bates found that "[w]hatever legal label petitioner puts on them, [] these allegations are quite clearly 'cause[s] or claim[s] by or on behalf of an[ ] alien arising from the decision or action by the Attorney General to . . . execute removal orders against [that] alien." *Id.* (quoting 8 U.S.C. § 1252(g)).  As such, Judge Bates found that "under clear statutory language, 'no court' has jurisdiction over those claims '[e]xcept as otherwise provided' in § 1252," which "provides for exclusive judicial review in the appropriate regional court of appeals-in this case, the U.S. Court of Appeals for the Fourth Circuit."  *Id.* (quoting § 1252(b)(2)).

>Furthermore, as the First Circuit found in *Aguilar*:
>
>Undocumented aliens cannot escape the vise-like grip of section 1252(b)(9) by the simple expedient of banding together claims consigned by law to administrative channels, declining to raise them within the ambit of removal proceedings per se, and maintaining that those unexhausted claims do not implicate a particular removal determination.  The reach of section 1252(b)(9) is not limited to challenges to singular orders of removal or to removal proceedings simpliciter.  By its terms, the provision aims to consolidate "*all* questions of law and fact" that "arise from" either an "action" or a "proceeding" brought in connection with the removal of an alien.  *See* 8 U.S.C. § 1252(b)(9).  Importantly, the statute channels federal court jurisdiction over "such questions of law or fact" to the courts of appeals and explicitly bars all other methods of judicial review, including habeas.  *Id.*

510 F.3d at 9.  It is true that "the words 'arising from' [used in both subsection (b)(9) and (g) of section 1252] do not lend themselves to precise applications," and that Congress likely "did not intend section 1252(b)(9) to sweep within its scope claims with only a remote or attenuated connection to the removal of an alien." *Id.* at 10.  Nevertheless, the emergency portion of the Emergency Petition in this case asks this Court to stay the execution of the BIA's final order of removal–upheld by the Fourth Circuit–and thus clearly "arise[s] from" an "action" or a

9

"proceeding" brought in connection with his removal, 8 U.S.C. § 1252(b)(9), and/or "the decision or action by the [Executive Branch] to . . . execute removal orders against" him, *id.* § 1252(g). As such, the Court is forced to conclude that the REAL ID Act vests exclusive jurisdiction over Petitioner's request in the courts of appeals (here the Fourth Circuit) and bars this Court from exercising any other method of judicial review over Petitioner's request for a stay, including habeas corpus, mandamus, and the All Writs Act. *Id.* §§ 1252(b)(9), (g).[4]

### III.  CONCLUSION

In light of the Court's conclusion that it lacks jurisdiction to grant Petitioner's emergency request for a stay of the BIA's removal order, the Court shall DISMISS that request for relief and those portions of the Emergency Petition that seek such relief. *See* Emerg. Pet. at ¶ 1. The Court takes no action at this time with respect to, and therefore shall retain, the remainder of the Emergency Petition. In the event that Petitioner decides to pursue those claims, the Court will, in the future, set a schedule for such additional briefing as may be necessary regarding those claims.

Date: June 18, 2008

 /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[4] The Court notes that its finding that it lacks jurisdiction to review Petitioner's request for a stay of removal because exclusive jurisdiction rests in the Fourth Circuit may, ultimately, have draconian results because, under the REAL ID Act, the Fourth Circuit will not obtain jurisdiction over Petitioner's request for a stay of removal until Petitioner has exhausted all available administrative remedies. *See* 8 U.S.C. § 1252(d). During the Court's telephonic motions hearings, counsel for the parties agreed that Petitioner's administrative appeals would not be deemed exhausted until the BIA had rendered a decision on his pending motion to reopen, an event that is unlikely to occur before his scheduled June 19, 2008 removal. Nevertheless, the fact that Petitioner may not be able to pursue relief in the Fourth Circuit prior to his removal does not alter the fact that, under the REAL ID Act, this Court lacks jurisdiction to entertain his request for a stay of removal.