UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEAN MARC NKEN,<br><br>　　　　　　　Petitioner,<br><br>　vs.<br><br>MICHAEL CHERTOFF, Secretary of<br>Department of Homeland Security,<br><br>　　　　　　　Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. 08-cv-1010 (CKK)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONER JEAN MARC NKEN'S MEMORANDUM OF LAW ON JURISDICTION
AND VENUE PURSUANT TO THE COURT'S JULY 16, 2008, ORDER AND
OPPOSITION TO THE RESPONDENT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................3

ARGUMENT.......................................................................................................7

I.      This Court Is Not Barred By the REAL ID Act From Reviewing Mr.
        Nken's Due Process Claims Relating to the Arbitrary Enforcement of the
        ISAP Program. .......................................................................................7

II.     This Court has Jurisdiction Over the Secretary of DHS, the Party
        Exercising Legal Control Over the ISAP Program and Mr. Nken's
        Deportation Status. ................................................................................13

III.    The District of Columbia is the Proper Venue Under 28 U.S.C. §1391(e). .......16

IV.     Mr. Nken's Claims Are Not Moot. ..............................................................21

CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**CASES**

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,*
  525 F.3d 8 (D.C.Cir.2008)................................................................. 23

*Ali v. Gonzales,*
  421 F.3d 7895 (9th Cir. 2005) ......................................................... 12

*Armentero v. INS,*
  340 F.3d 1058 (9th Cir. 2003) ......................................................... 16

*Bartman v. Cheney,*
  827 F. Supp. 1 (D.D.C. 1993)........................................................... 19

*\*Boumediene v. Bush,*
  128 S. Ct. 2229 (2008) ............................................................ 8, 9,
                                                                              11, 13, 14

*\*Braden v. Thirteenth Judicial Court of Kentucky,*
  93 S.Ct. 1123 (1973) ...................................................................... 15

*Chetman-Bey v. Thornburgh,*
  864 F.2d 804 (D.C. Cir 1988)........................................................ 15

*Fletcher v. U.S. Parole Com'n,*
  550 F. Supp. 2d 30 (D.D.C. 2008) ................................................. 22

*Flores v. District of Columbia,*
  437 F. Supp. 2d 22 (D.D.C. 2006) ................................................. 33

*Franz v. United States,*
  591 F. Supp. 374 (D.D.C. 1984) .................................................... 21

*Freeman v. Fallan,*
  254 F. Supp. 2d 52 (D.D.C. 2003) ................................................. 21

*Guerra v. Meese,*
  786 F.2d 414 (D.C. Cir. 1986)........................................................ 15

*Henderson v. INS,*
  157 F.3d 106 (2d Cir. 1998) .....................................................15, 16

*Igwebuike v. Caterisano,*
  No. 05-6640-ag, 230 Fed. Appx. 278 (4th Cir. April 20, 2007) ................................ 12

*INS v. St. Cyr,*
  121 S.Ct. 2271 (2001) ................................................................................ 8, 13

*Jones v. Cunningham,*
  83 S.Ct. 373 (1963) ....................................................................................... 15

*Kassem v. Washington Hosp. Ctr.,*
  513 F.3d 251 (D.C. Cir.2008) ........................................................................ 23

*Kowal v. MCI Communications Corp.,*
  16 F.3d 1271 (D.C. Cir.1994) ........................................................................ 23

*Kumarasamy v. Attorney General,*
  453 F.3d 169 (3d Cir. 2006) .......................................................................... 12

*Lamont v. Haig,*
  590 F.2d 1124 (D.C. Cir. 1978) ..................................................................... 18

*Leitao v. Reno,*
  311 F.3d 453 (1st Cir. 2002) ......................................................................... 22

*Mathis v. Geo Group, Inc.,*
  535 F. Supp. 2d 83 (D.D.C. 2008) ................................................................. 19

*Mohica v. Reno,*
  970 F. Supp. 130 (E.D.N.Y. 1997) ................................................................ 16

*Nation v. U.S. Government,*
  512 F. Supp. 121 (D.C. Ohio 1981) ............................................................... 22

*Nestor v. Hershey,*
  425 F.2d 504 (D.C. Cir. 1969) ....................................................................... 19

*Nguyen v. B.I. Incorporated,*
  435 F. Supp. 2d 1109 (D. Or. 2006) .............................................................. 12

*Puri v. Gonzales,*
  464 F.3d 1038 (9th Cir. 2006) ....................................................................... 11

*Reuben H. Donnelly Corp. v. FTC,*
  580 F.2d 264 (7th Cir. 1978) ......................................................................... 21

*Rumsfeld v. Padilla*,
  124 S.Ct. 2711 (2004) ................................................................... 15

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
  127 S. Ct. 1184 (2007) ................................................................. 22

*Smart v. Goord*,
  21 F. Supp. 2d 309 (S.D.N.Y. 1998).............................................. 22

*Smith v. Dalton*,
  927 F. Supp. 1 (D.D.C. 1996)....................................................... 19

*Tapia Garcia v. INS*,
  237 F.3d 1216 (10th Cir. 2001) .................................................... 22

*U.S. ex rel Armstrong v. Wheeler*,
  321 F. Supp. 471 (1970)................................................................ 18

*U.S. v. Wilson*,
  240 Fed.Appx. 139 (2007)............................................................. 23

*William v. Gonzales*,
  499 F.3d 329 (2007)...................................................................... 23

*Zadvydas v. Davis*,
  121 S.Ct. 2491 (2001) ..............................................................12, 15

## STATUTES

*REAL ID Act of 2005,
  Pub. L. No. 109-113, 199 Stat. 231, 301, ("REAL ID Act")....................... 7

    8 U.S.C. § 1252(a)(5) ................................................................ 9

    8 U.S.C. § 1252(b)(9) ................................................................ 9

6 U.S.C. § 202(3)........................................................................17, 18

8 U.S.C. § 1103.............................................................................17, 18

8 U.S.C. §1231(a)(1)(C)................................................................ 3, 22

*28 U.S.C. § 2243........................................................................ 7, 14

*28 U.S.C. §1391(e) ....................................................................... 18

**REGULATIONS**

8 C.F.R. § 2.1 ................................................................................................ 17

8 C.F.R. § 241 *et seq* ...................................................................................... 10

8 C.F.R. § 241.4(l)(2) ...................................................................................... 20

8 C.F.R. § 1003.2(d) ....................................................................................... 23

8 C.F.R. § 1236.1(c)(6)(ii),(iv) ...................................................................... 10

8 C.F.R. § 1236.1(c)(6)(d) ............................................................................. 10

**LEGISLATIVE RECORD**

H.R. Rep. No. 109-72 (2005) ........................................................................... 9

Petitioner Jean Marc Nken submits this memorandum of law pursuant to the Court's July 16, 2008, Order requesting briefing on the following issues: "(1) jurisdiction over Petitioner's habeas claims (as opposed to subject matter jurisdiction); and (2) venue for Petitioner's claims." This memorandum also opposes the government's July 29, 2008 motion to dismiss.

Mr. Nken's habeas claims are properly before this Court. *First,* contrary to the Respondent's[1] assertions, this Court is not barred by the REAL ID Act from reviewing and deciding Mr. Nken's habeas claims. Mr. Nken petitions this Court for a writ of habeas corpus challenging his imminent deportation which directly resulted from the Department of Homeland Security Immigration and Custom Enforcement's ("ICE") arbitrary and illegal administration of the Intensive Supervision Appearance Program ("ISAP"). He challenges any such deportation which may preclude, or seriously prejudice, the full and fair adjudication of his application for asylum and protection under the Convention Against Torture. The particular substantive grounds upon which he bases his habeas petition are not the subject of his petition before this Court. But so long as that petition rests on theories which cannot be considered in the petition for review process, as they cannot be presented to an immigration judge in the course of removal proceedings, the REAL ID Act does not, and consistent with the Constitution's protection of the writ under the Suspension Clause, could not, limit this Court's authority to grant habeas relief for the alleged abuses of the core legal and Constitutional protections.

*Second,* DHS Secretary Chertoff is a proper respondent for this petition and this Court has personal jurisdiction over him. The "immediate custodian" rule does not apply in

---

[1]    Respondent Michael Chertoff hereinafter is referred to as either "Respondent" or the "government".

immigration cases where a petitioner is alleging unlawful acts which caused him to be placed in detention and put at risk of immediate deportation. Mr. Nken is not challenging his removal order, but rather the unlawful administration of ISAP which led to his detention and risk of immediate deportation. Accordingly, Secretary Chertoff, as the government official exercising legal control over the administration of ISAP and the enforcement of deportation orders, is the proper respondent in this case.

*Third*, the District of Columbia is the proper venue for this petition because the individuals with ultimate decision-making authority regarding Mr. Nken's supervised release – the decisions at issue in this case — and the conditions of his release reside in Washington, D.C. Moreover, pursuant to the applicable federal regulations, the documents controlling the operation and supervision of ISAP and particularly those documents controlling Mr. Nken's supervised release under ISAP are located at ICE headquarters in Washington, D.C., and the venue is convenient for both parties.

*Fourth*, contrary to Respondent's assertion, Mr. Nken's petition is not moot. Respondent's argument that Mr. Nken's habeas claims are moot because he resisted deportation and thus is subject to detention under 8 U.S.C. §1231(a)(1)(C) misses the point. Mr. Nken's claims are not focused on his *detention*, but rather arise from the government's arbitrary and unlawful acts in connection with ISAP which directly caused Mr. Nken to be put at risk of imminent *deportation*. If not for the unlawfulness of the government's finding that Mr. Nken violated the arbitrary and unreasonable terms of his supervised release under ISAP, he would not have been placed in the position of having to refuse the government's June 19 effort to deport him. So long as he faces deportation, and challenges that deportation – and his particular claim before this Court is not barred by the REAL ID Act – his claims are not moot.

2

## BACKGROUND

Mr. Nken is a 40 year old native and citizen of Cameroon. First Amended Petition for a Writ of Habeas Corpus ¶ 1 (June 27, 2008) ("Amended Petition"). On April 9, 2001, Mr. Nken fled to the United States to escape persecution and torture by the Cameroon government because of his political opposition activities. *Id.* On April 9, 2001, Mr. Nken filed a petition for asylum and protection under the Convention Against Torture (CAT). *Id.* ¶ 1.

While his petition was pending in the immigration courts, Mr. Nken met and married his current wife, Brigitte Beoleck, a U.S. citizen. *Id.* ¶ 14. They currently have a one-year old child who was born in the United States. *Id.* On November 4, 2005, Ms. Belock filed an I-130 (Petition for an Alien Relative for adjustment of status) on behalf of her husband.

On June 16, 2006, while the I-130 application was still pending before DHS, the BIA affirmed the immigration court's decision to deny Mr. Nken asylum and issued a final order of removal. *Id.* ¶ 6. On August 8, 2006, ICE arrested Mr. Nken at his I-130 interview with U.S. Citizenship and Immigration Services. *Id.* ¶ 7. ICE then detained Mr. Nken for nearly three months, during which time the Department of Homeland Security (DHS) approved his I-130, making him statutorily eligible to adjust to lawful permanent residency based on his U.S. citizen wife. *Id.* ¶ 8. DHS Chief Counsel George Maugans refused to join in a motion to reopen Mr. Nken's final removal order to allow Mr. Nken to adjust his status. *Id.*

Soon thereafter, ICE released Mr. Nken from detention and placed him in the ISAP program, a form of supervised release. *Id.* ¶ 15. ISAP officials initially required Mr. Nken to report to the ISAP office in Baltimore once every two weeks. *Id.* ¶ 15. In addition, ISAP officials and their ICE supervisors repeatedly pressured Mr. Nken to leave the United States immediately in spite of his pending appeal of the immigration court's order before the United States Court of Appeals for the Fourth Circuit. *Id.* ¶ 15. In May 2007, Mr. Nken's ISAP case

3

manager ordered him to wear an ankle monitor and to report to the ISAP office in person five days per week without giving Mr. Nken an explanation for the rigorous new supervision requirements. *Id.*

The ISAP conditions, which required him to commute for several hours to and from Baltimore each day from his home in Hyattsville, Maryland, imposed a tremendous burden on Mr. Nken who was the primary caregiver for his one-year old child. *Id.* ¶ 16. This burden became even more onerous when his wife, who was the sole wage-earner in the family, fell ill from a debilitating medical condition and Mr. Nken had to care for her as well. *Id.* ¶¶ 16-17. In December 2007, Mr. Nken received a work authorization but was unable to work because the daily ISAP reporting schedule along with his child care responsibilities, made it impossible to do so. *Id.* ¶ 16. When his wife's illness left her unable to work full time, the cost of commuting to and from Baltimore five days a week became too much to bear. *Id.* ¶ 17.

Throughout his period of supervision under ISAP, Mr. Nken repeatedly informed his case managers of the hardships that the daily supervision requirements imposed on him and his family and repeatedly tried to work out a more reasonable arrangement. *Id.* His ISAP case managers and their ICE supervisors, however, refused to amend the conditions of his release and threatened him with deportation in retaliation for his complaints. *Id.* One ISAP supervisor who scheduled a meeting with ICE officials to assist Nr. Nken was reportedly fired for her efforts. *Id.* ¶ 18. When Mr. Nken did meet with ICE officials, one of them shoved him, yelled at him, and told him to leave the country immediately in spite of his pending appeal. *Id.* That official, Paul Welke, later told Mr. Nken's attorney that he was under intense pressure from ICE managers to arrest and deport Mr. Nken because he had been in the country for several years. *Id.* When Mr.

4

Nken's attorney reminded Mr. Welke of Mr. Nken's sick wife and baby, Mr. Welke threatened to have the baby taken into protective custody. *Id.*

On April 3, 2007, the Fourth Circuit denied Mr. Nken's Petition for Review of the Immigration Court's decision denying asylum and CAT. *Id.* ¶ 9. However, on May 6, 2008, Mr. Nken filed a motion to reopen before the BIA based on changed country conditions in Cameroon. *Id.* ¶¶ 9, 19. In February 2008, conditions in Cameroon worsened such that new and additional supporting evidence became available showing that Mr. Nken would face torture should he be returned to that country. *Id.* ¶ 19. Cameroonian President Biya had announced his intention to amend the country's constitution to stay in power indefinitely. Ensuing protests led to numerous arrests by the government, including the arrest and torture of Mr. Nken's brother. *Id.* ¶¶ 19-20. A petition for review of the BIA's denial of this motion remains pending before the U.S. Court of Appeals for the Fourth Circuit.

On May 13, 2008, Mr. Nken called the ISAP office and told his case manager that he had no money to pay for gas to get to Baltimore that day. *Id.* ¶ 21. His case manager told him that he could simply call the ISAP office whenever he could not afford the trip, which Mr. Nken did over the next several days. *Id.* On May 22, 2008, however, Nr. Nken's case manager informed Mr. Nken that he had been removed from the ISAP program for failing to report to the ISAP office in person and was, therefore, subject to immediate arrest and deportation. *Id.* ¶ 22. Days later, ICE officers arrested Mr. Nken at gunpoint outside his home, detained him, and told him he would be deported for failure to comply with the ISAP conditions. *Id.* ¶¶ 10, 23. On June 19, ICE attempted to deport Mr. Nken to Cameroon but was unable to do so because Mr. Nken resisted out of fear that he would be persecuted and tortured there. *Id.* ¶ 24. An ICE official told him that his deportation would be rescheduled within three or four weeks. *Id.*

On June 13, 2008, Mr. Nken filed an emergency petition for habeas corpus, injunctive relief, and a stay of removal with this Court. The Court bifurcated the emergency portion of the petition – *i.e.,* the request that this Court stay Mr. Nken's impending removal – from the remainder of the claims and requests for relief in the Emergency Petition. *See Nken v. Chertoff,* No. 08-1010, 2008 WL 2436696 (D.D.C. June 18, 2008). The Court denied the requested emergency stay, but made clear that it was not addressing its jurisdiction to entertain, or the merits of, the remaining claims in the Petition, reserving those issues for later, additional briefing as necessary. *Id.* at *5, n. 1.

On June 27, 2008, Mr. Nken filed an Amended Petition before this Court for a writ of habeas corpus alleging due process violations in connection with the ISAP program which resulted in ICE's decision to deport Mr. Nken immediately. On July 16, this Court issued an Order requesting briefing by the parties on "(1) jurisdiction over Petitioner's habeas claims (as opposed to subject matter jurisdiction); and (2) venue for Petitioner's claims." The government responded to the Court's order by filing a Motion to Dismiss on July 29 that addressed the issues identified by this Court, including this Court's habeas jurisdiction under 28 U.S.C. § 2243 and the REAL ID Act of 2005, Pub. L. No. 109-113, 199 Stat 231, 301, ("REAL ID Act"), and raised arguments regarding mootness. *See* Motion to Dismiss (July 29, 2008).

In this memorandum, Mr. Nken responds to the Court's Order and challenges the government's Motion to Dismiss. In addition, Mr. Nken responds to the additional issues raised in Respondent's Motion and accompanying memorandum regarding the habeas-stripping provisions of the REAL ID Act.

**ARGUMENT**

I.    **This Court Is Not Barred By the REAL ID Act From Reviewing Mr. Nken's Due Process Claims Relating to the Arbitrary Enforcement of the ISAP Program.**

Enshrined and made available to all in the Constitution as a fundamental guarantor of liberty, the writ of habeas corpus embodies principles of protection from unlawful and abusive government action dating back to the Magna Carta. That charter decreed that "[n]o free man shall be taken or imprisoned or dispossessed, or outlawed, or banished, or in any way destroyed, nor will we go upon him, nor send upon him, except by legal judgment of his peers or by the law of the land." *See Boumediene v. Bush*, 128 S. Ct. 2229, 2244 (2008) (quoting Art. 39 of the Magna Carta). These principles were most recently recognized and affirmed by the Supreme Court in *Boumediene v. Bush*, in which the Court explained that the writ is a "vital instrument for the protection of individual liberty" and an "essential mechanism in the separation of powers scheme" which is the driving force behind the constitutional plan. *Id.* at 2246. *See also INS v. St. Cyr*, 121 S.Ct. 2271, 2279-80 (2001) ("At its core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). The Court made clear that these protections extended to foreign nationals, stating that "[b]ecause the Constitution's separation-of-powers structure, like the substantive guarantees of the Fifth and Fourteenth Amendments, . . . protects persons as well as citizens, foreign nationals who have the privilege of litigating in our courts can seek to enforce separation-of-powers principles." *Id.* (citations omitted).

The government's motion to dismiss this habeas petition for lack of jurisdiction places these fundamental rights in jeopardy. In its motion, the government argues that Mr. Nken's petition is barred by the REAL ID Act because his claims are "collateral to, and arise from, [his]

final order of removal." Gov't Motion to Dismiss at 3. The government's suggestion that Mr.

Nken's claims are barred by the REAL ID Act is incorrect and disingenuous.

The purpose of the REAL ID Act is to "to give every alien a fair opportunity to obtain

judicial review while restoring order and common sense to the judicial review process."

H.R.Rep. No. 109-72, at 174 (2005) (Conference Report). Under the REAL ID Act, a petition

for review before a court of appeals is a petitioner's only means for judicial review of a removal

order. 8 U.S.C. § 1252(a)(5). That statute states, *inter alia*:

> Notwithstanding any other provision of law (statutory or nonstatutory), including
> section 2241 of title 28, United States Code, or any other habeas corpus provision,
> and sections 1361 and 1651 of such title, a petition for review filed with an
> appropriate court of appeals in accordance with this section shall be the sole and
> exclusive means for *judicial review of an order of removal* entered or issued
> under any provision of this chapter. . . .

*Id.* (emphasis added). Further, §1252(b)(9) limits the scope of questions for judicial review to

questions of law and fact arising from the removal proceedings. *See* 8 U.S.C. § 1252(b)(9)

(defining scope of judicial review of Fourth Circuit as a review of "all questions of law and fact .

. . arising from any action taken or proceeding brought to remove an alien from the United

States. . . .").

In *Boumediene*, the Supreme Court explained that the only circumstances under which

Congress may limit access to the writ of habeas corpus are where Congress has established an

"adequate and effective" alternative to habeas review. *Boumediene*, 128 S. Ct. at 2242. Thus,

because a statute should be construed to be consistent with the Constitution, the REAL ID Act

must be construed as follows. If the claim is one that is part of the proceeding subject to the

petition for review process in the Court of Appeals, then the Court of Appeals provides the

exclusive forum for its resolution. That forum and the petition for review process provide the

full and fair adjudication of the claim that the Constitution demands. But when the jurisdictional

8

limits prevent claims from being raised before an immigration judge or the BIA, thereby preventing claims from being raised in a petition for review before a court of appeals, where principles of exhaustion prevent claims from being raised in the first instance in the petition for review, the REAL ID Act does not and could not limit this Court's authority to exercise habeas review over such claims. To choose an illustration: If an individual was fully subject to removal but would not otherwise be removed immediately, and the immigration agents stated to the individual subject to removal – we will deport you tomorrow unless you pay us $10,000 – then the individual could bring a habeas petition to challenge that unlawful action, and the writ would surely issue.

Here, Mr. Nken is challenging the legality of ICE's actions in connection with its administration of the ISAP program which resulted in his imminent deportation. Amended Petition ¶¶ 2, 14–26, 83–86. Whether Mr. Nken's due process claims in this case with respect to the ISAP program warrant such relief is yet to be determined. But he is alleging claims that are entirely separate from the questions that are currently on appeal to the Fourth Circuit. These actions by ICE cannot be reviewed in connection with the removal order or in connection with any other sort of petition brought before an immigration judge or the BIA. See 8 C.F.R. § 1236.1(c)(6)(ii), (c)(6)(iv), (d)(2), (d)(3)(ii).[2] Because the petition for review process is limited

---

[2] These regulations present two limited scenarios in which post-order custody determinations may be appealed to the BIA. Under 8 C.F.R. § 1236.1(c)(6)(ii), (c)(6)(iv), an alien who has been detained for six months after a final order of removal terminating his lawful permanent resident status may appeal that custody determination to the BIA. Additionally, under 8 C.F.R. § 1236.1(d)(2), (d)(3)(ii), an alien who has been *released* may appeal to the BIA for review of a director's decision regarding the conditions of his release within 10 days of the director's decision. An immigration judge may not review post-order custody determinations. 8 C.F.R. § 1236.1(d)(1). Mr. Nken's claims present neither of the two scenarios in which administrative review of post-order custody determinations is possible.

9

by the principles of exhaustion, and therefore to claims presented in the lower administrative

courts, Mr. Nken could not have presented the claims at bar in his petition for review to the

Fourth Circuit. In other words, Mr. Nken's claims are outside the scope of review of the courts

of appeals because they allege facts that are not part of the administrative record, nor could they

have been. Thus, under these circumstances, to dismiss Mr. Nken's claims for lack of

jurisdiction would deprive Mr. Nken not only of "adequate and effective" judicial review of his

due process on his claims, but *any* judicial review whatsoever. Such a position, of course, is

untenable. As made clear by the Supreme Court in *Boumediene*, the legislature cannot deny

individuals residing in the U.S. or under its jurisdiction meaningful access to a judicial forum.

*See Boumediene*, 128 S. Ct. at 2263.

     Indeed, since the enactment of REAL ID, courts, while declining to grant habeas review

in cases which challenge the underlying legality of the removal order, have held that the Act

does *not* eliminate habeas jurisdiction over challenges to issues *independent* of the deportation

proceedings themselves. *See Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2006) (finding that

REAL ID does not apply where the "claim is not a direct challenge to an order of removal"). *See*

*also Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (noting "there is no reason to believe that

§1252(b)(9)'s exception for independent claims is restricted to those related to detention");

*Kumarasamy v. Att'y Gen.*, 453 F.3d 169, 172 (3d Cir. 2006) (finding habeas petition appropriate

to challenge whether petitioner received notice of removal order); *Ali v. Gonzales*, 421 F.3d

7895, 797 n. 1 (9th Cir. 2005) (habeas jurisdiction upheld for challenge to choice of removal

country); *Igwebuike v. Caterisano*, No. 05-6640-ag, 230 Fed. Appx. 278 (4th Cir. April 20,

2007) (finding that the REAL ID Act did not apply to habeas petitioner's challenge of the

District Director's determination that he was ineligible for an adjustment of status); *see also* Amended Petition ¶¶ 42–53 (collecting cases).

Significantly, courts have uniformly retained jurisdiction over claims arising from the post-removal order ISAP detention scheme on the grounds that the claims did not require judicial review of an order of removal. *See, e.g., Mareya v. Mukasey*, No. 06-4525-ag, 2007 WL 4373012, at * 5 (D. Minn. Dec. 12, 2007) (review habeas petition challenging government's denial of supervised release under ISAP); *Nguyen v. B.I. Incorporated*, 435 F. Supp.2d 1109 (D. Or. 2006) (reviewing habeas petition challenging the constitutionality of the ISAP scheme); *Jean-Henriquez v. Dep't of Homeland Security*, No. 05-0304, 2006 WL 1687853, at *2 (N.D. Fla. June 15, 2006). Indeed, the ISAP program was developed in response to the Supreme Court's decision in *Zadvydas v. Davis*, which rejected as unconstitutional the government's argument that the Attorney General has discretion to detain indefinitely an alien subject to a final order of removal. 121 S.Ct. 2491 (2001). Courts thus have paramount interest in retaining jurisdiction to review the administration of the supervised release scheme which implemented the Supreme Court's decision in that case so as to ensure that the executive complies with constitutional due process requirements.

Serious Suspension Clause concerns would be raised if this Court determines that the REAL ID Act bars its jurisdiction over Mr. Nken's habeas petition. To bar jurisdiction over Mr. Nken's claims in this case would unconstitutionally deprive the Petitioner of *any* judicial forum to review his claims and effectively immunize the government from any and all abuses in administering the ISAP program. The Supreme Court made clear in *Boumediene* that to bar a habeas petitioner meaningful review of his or her claims is a violation of the Suspension Clause. 128 S. Ct. at 2262; *see also INS v. St. Cyr*, 121 S.Ct. at 2279-82 (noting that a construction of the

11

statute at issue which would entirely preclude review in a deportation case would give rise to

substantial constitutional questions). In *Boumediene*, the Court held that the administrative

regime enacted by Congress for reviewing the legality of detaining enemy combatants was an

inadequate substitute for habeas because, among other things, it failed to incorporate a means to

correct errors in the administrative process and failed to allow the authority to admit and

consider relevant exculpatory evidence that was not introduced in the earlier proceeding. 128 S.

Ct. at 2270–75. As in *Boumediene* where the Court held that the administrative regime deprived

alien detainees of an "effective and adequate" forum for judicial review of their claims, there is

no question in the present case that the "effective and adequate" forum standard will not be met

if Mr. Nken's claims are dismissed for lack of jurisdiction. The petition for review process

provides for *no* mechanism whatsoever to review claims for illegal and arbitrary decisions in

connection with the ISAP detention scheme and other post-removal order claims. *See also INS*

*v. St. Cyr*, 121 S.Ct. at 2279 (holding that "some 'judicial intervention in deportation cases' is

unquestionably 'required by the Constitution.'").

> Moreover, as explained in the Amended Petition, even if Mr. Nken's claim could be

reviewed by the Fourth Circuit through the Petition for Review process, the process is

constitutionally inadequate to ensure meaningful judicial review. As in the military commissions

procedures found unconstitutional in *Boumediene*, the Fourth Circuit cannot admit new evidence

in connection with Mr. Nken's petition for review, which would prohibit that court from

effectively reviewing any issues that arose outside of the administrative proceedings below. *See*

Amended Petition ¶¶ 60-71.

> Accordingly, Mr. Nken's claims neither require this Court to review his final order of

removal nor are they claims that are collateral to or arise from such an order. Rather, they relate

to the legality of the government's administration of the ISAP program relating to post-removal

detention, and the government's attempt to deport Mr. Nken while his administrative

proceedings were pending.  These challenges are separate and independent of Mr. Nken's

removal proceedings, and thus are not barred by the REAL ID Act and are properly within the

scope of this Court's jurisdiction over habeas claims.

**II.      This Court has Jurisdiction Over the Secretary of DHS, the Party Exercising
Legal Control Over the ISAP Program and Mr. Nken's Deportation Status.**

Under the habeas statute, "[t]he writ, or order to show cause shall be directed to the

person having custody of the person detained." 28 U.S.C. § 2243.  Thus, the jurisdictional

question in this case centers on the whether Michael Chertoff, Secretary of DHS, is the

"custodian" of Mr. Nken and therefore, the proper respondent to this habeas action.  Because

Secretary Chertoff is the government official who exercises legal control and authority over the

ISAP program and the enforcement of deportation orders and because he is the official

responsible for the unlawful imminent deportation, Secretary Chertoff is the proper respondent to

this habeas action and this Court has personal jurisdiction over him.

It is well established that the court issuing the writ must have jurisdiction over the official

in control of the petitioner because "the writ of habeas corpus does not act upon the prisoner who

seeks relief, but upon the person who holds him in what is alleged be unlawful custody," or the

official responsible for an unlawful custody situation. *Braden v. 30th Judicial Circuit Court of

Kentucky,* 93 S.Ct. 1123, 1131–32 (1973). *See also Chatman-Bey v. Thornburgh*, 864 F.2d 804,

810-12 (D.C. Cir 1988) ("A district court may not entertain a habeas corpus action unless it has

personal jurisdiction over the custodian of the prisoner." (quoting *Guerra v. Meese*, 786 F.2d 414

(D.C. Cir. 1986)).   In those cases where a petitioner is directly challenging his confinement, the

"immediate custodian rule" most likely applies and the proper respondent is the warden of the facility where the prisoner is being held at the time the petition is filed.

However, the Supreme Court has made clear that "custody" is not so narrowly defined to only allow habeas challenges to the legality of petitioner's confinement. Courts have held that habeas relief may apply to other forms of custody, including parole and imminent deportation. *Braden*, 93 S.Ct. at 1131-32 (denial of right to speedy trial); *Jones v. Cunningham*, 83 S.Ct. 373, 377 (1963) (parole); *Zadvydas*, 121 S.Ct. 2491 (2001) (post-removal detention); *Urbina v. Godfrey*, No. 06-538-ST, 2006 WL 2474881, *3 (D.Or. Aug. 22, 2006) (ISAP and imminent deportation). In those cases, courts have held that the respondent is not the warden or physical custodian, but rather "the entity or person who exercises legal control with respect to the challenged 'custody.'" *Rumsfeld v. Padilla*, 124 S.Ct. 2711, 2720 (2004) (citing *Braden*); *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998) (the proper respondent depends "primarily on who has power over the petitioner"). Thus, for example, in *Braden*, the Supreme Court found that a prisoner detained in Alabama could bring a *habeas* petition in the United States District Court for the Western District of Kentucky where the prisoner challenged the Commonwealth of Kentucky's failure to provide him with a speedy trial. 93 S.Ct. at 1131-32.

While courts in this jurisdiction have not addressed the issues, courts in other jurisdictions have applied *Braden* and held the proper respondent need *not* be the warden of the facility where the alien is physically being held, but rather the official responsible for deportation — in most deportation cases, either the Attorney General or Secretary of DHS. For example, in *Armentero v. INS*, the U.S. Court of Appeals for the Ninth Circuit found that the Secretary of DHS and Attorney General are proper respondents in a habeas petition challenging imminent deportation because they share responsibility for overseeing immigration law enforcement under

14

the Homeland Security Act. 340 F.3d 1058, 1072-74 (9th Cir. 2003), *rehearing granted and opinion withdrawn on other grounds by* 382 F.3d 1153 (9th Cir. 2004). Specifically, the appellate court observed that before the Homeland Security Act of 2002 was enacted, "the Attorney General oversaw the activities of the INS and exercised a unique decisionmaking authority over immigration matters, including detention and parole of aliens." *Armentero*, 340 F.3d at 1071. Because the Homeland Security Act transferred most immigration law enforcement responsibilities from the INS, a subdivision of the Department of Justice, to a subdivision of the DHS, the court held that both the Attorney General and DHS were proper respondents. *Id.* For the same reasons, in *Patterson v. INS*, No. 3:03CV1363, 2004 WL 1114575, at *2-3 (D.Conn. May 14, 2004), the district court likewise found that the Secretary of DHS is a proper respondent in a habeas petition challenging imminent deportation. *See also Alcaide-Zelaya v. McElroy*, Nos. 99.5102(DC), 99.9999(DC), 2000 WL 1616981, *4-5 (S.D.N.Y. Oct. 27, 2000) (finding the Attorney General to be an appropriate respondent in habeas petitions challenging imminent deportation); *Mojica v. Reno*, 970 F.Supp. 130, 167 (E.D.N.Y. 1997) (finding the Attorney General to be an appropriate respondent in habeas petitions challenging imminent deportation); *Henderson*, 157 F.3d at 126 (discussing reasons why the Attorney General would be an appropriate respondent in habeas petitions challenging imminent deportation).

Like the petitioners in the above cases, Mr. Nken is not directly challenging just his physical confinement, but also the arbitrary and unlawful government actions placing him at risk of imminent deportation during pendency of his legal proceedings. DHS is the agency in charge of ISAP and the agency that governs his deportation. 6 U.S.C. § 202(3); 8 U.S.C. § 1103; 8 C.F.R. § 2.1. Thus, naming the warden of the federal institution in Maryland would do nothing

to remove Mr. Nken from "custody" – that is, his status of imminent deportation – or to address the unlawful government actions raised in the habeas petition. Rather, the individual exercising legal control over Mr. Nken's deportation status and his status under the ISAP program is not the warden of Mr. Nken's detention facility, but DHS Secretary Michael Chertoff.

As head of DHS, Secretary Chertoff has ultimate authority over the ISAP program and the enforcement of immigration laws. *See* 6 U.S.C. § 202(3) (stating that the DHS Secretary is charged with "[c]arrying out the immigration enforcement functions vested by statute in, or performed by, the Commissioner of Immigration and Naturalization (or any officer, employee, or component of the Immigration and Naturalization Service)"); 8 U.S.C. § 1103 ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens. . . ."); 8 C.F.R. § 2.1 ("All authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws are vested in the Secretary of Homeland Security."). Accordingly, because Secretary Chertoff is ultimately responsible for ICE, the supervision of how ICE operates, and the imminency of Mr. Nken's deportation, he is, therefore, a proper respondent to Mr. Nken's petition. Because DHS headquarters and Secretary Chertoff's office is in the District of Columbia, this court has personal jurisdiction over him.

**III.    The District of Columbia is the Proper Venue Under 28 U.S.C. §1391(e).**

The government's claim that venue is not appropriate in this District is also without merit. *See* Gov't Motion at 7–8. As an initial matter, the government improperly relies on 28 U.S.C. § 1391(b) as controlling statutory authority in this case. Because Mr. Nken's habeas

action seeks relief against a government official, 28 U.S.C. § 1391(e) is the applicable venue

provision[3] which provides as follows:

> A civil action in which a defendant is an officer or employee of the United States
> or any agency thereof acting in his official capacity or under color of legal
> authority . . . may . . . be brought in any judicial district in which (1) a defendant
> in the action resides, (2) a substantial part of the events or omissions giving rise to
> the claim occurred . . . , or (3) the plaintiff resides if no real property is involved
> in the action.

As explained above, Secretary for DHS, Michael Chertoff, is the proper respondent in this case

given that he has ultimate authority of both custody and release determinations in post-order

cases. *See* 6 U.S.C. § 202(3); 8 U.S.C. § 1103; 8 C.F.R. § 2.1. As the government correctly

points out, a judicial district in which a federal officer resides means the "official residence" of

the defendant, *i.e.,* "where the official duties are performed." Gov't Motion at 7 (citing *Lamont*

*v. Haig*, 590 F.2d 1124, 1128 n. 19 (D.C. Cir. 1978)). Thus, because Michael Chertoff, as

Secretary for DHS performs his duties in Washington, D.C., the location of DHS headquarters,

he therefore "resides" in Washington, D.C., for purposes of § 1391(e), and venue is proper in this

district. *See, Nestor v. Hershey*, 425 F.2d 504 (D.C. Cir. 1969) (finding the residence of a public

official sued in his official capacity is his official residence; that is, the place where his office is

maintained); *Smith v. Dalton*, 927 F. Supp. 1, 5-6 (D.D.C. 1996) (finding that while Secretary of

Navy performs some duties in other districts, a significant amount of the duties are performed in

Washington, D.C., and thus, venue was proper); *Bartman v. Cheney*, 827 F. Supp. 1, 2 (D.D.C.

---

[3] *See U.S. ex rel Armstrong v. Wheeler*, 321 F. Supp. 471 (1970) (holding that §1391(e) controls
venue in habeas actions). In any event, even if §1391(b) were to apply, as explained *infra*, venue
is proper in this case because a substantial part of the events or omissions giving rise to the claim
occurred in the District of Columbia.

1993) ("When an officer or agency head performs a "significant amount" of his or her official

duties in the District of Columbia, the District of Columbia is a proper place for venue.").

The government acknowledges that there is a strong presumption in favor of a plaintiff's

choice of forum, (Gov't Motion at 8 (citing *Mathis v. Geo Group, Inc.*, 535 F. Supp. 2d 83, 87

(D.D.C. 2008)), but claims that "in *habeas corpus* cases, venue is not likely to be proper in the

District of Columbia where the prisoner was not sentenced and is not confined in the District of

Columbia." Again, the government is mixing apples with oranges. As explained above, unlike

*Mathis* and the other cases cited by the government, this case is not a challenge to the conditions

of custody, but rather is a challenge to the ISAP policies and decisions made to place Mr. Nken

in detention and at risk of imminent deportation of Mr. Nken. Thus, it is improper to name the

physical custodian of the detention facility as respondent and likewise is improper to transfer this

case to the venue where Mr. Nken is being detained.

Moreover, venue also is appropriate under 28 U.S.C. § 1391(e)(2) because the legal

authorities responsible for the decision-making regarding the program under which Mr. Nken's

supervised release took place are located in Washington, D.C., at Headquarters Post-Order

Detention Unit (HQPDU) and thus, a "substantial part of the events or omissions giving rise to

the claim occurred" in the District of Columbia. Unlike the cases cited by the government, this

is not a case where the connection to the District of Columbia is merely based on the fact that the

policies or regulations at issue were formulated there. Gov't Motion at 9. Rather, as set forth in

the applicable regulations, the actual decision-makers ultimately responsible for the conditions of

Mr. Nken's supervised release and later the revocation of release reside in the District. The

regulations applicable to the custody and detention of post-removal aliens set forth at 8 C.F.R.

§ 241 make clear that the HQPDU and the Executive Associate Commissioner, both of which are

18

in Washington, D.C., are the entities directly and legally responsible for, and with ultimate

authority over revocation of release determinations.  Specifically, the regulations state that:

> (2)    *Determination by the Service.*  The Executive Associate Commissioner
> shall have authority, in the exercise of discretion, to revoke release and return to
> Service custody an alien previously approved for release under the procedures in
> this section. A district director may also revoke release of an alien when, in the
> district director's opinion, revocation is in the public interest and circumstances
> do not reasonably permit referral of the case to the Executive Administrative
> Commissioner. . . .

8 C.F.R. § 241.4(l)(2).  Even in cases where the district director is delegated authority to

revoke release, that decision is ultimately subject to review by the HQPDU.  Subsection

241.4(l)(3) provides:

> (3)    *Timing of review when release is revoked.*  If the alien is not released from
> custody following the informal interview provided for in paragraph (l)(1) of this
> section, the HQPDU Director shall schedule the review process in the case of an
> alien whose previous release or parole from immigration custody pursuant to a
> decision of either the district director, Director of the Detention and Removal
> Field Office, or Executive Associate Commissioner under the procedures in this
> section has been or is subject to being revoked.  The normal review process will
> commence with notification to the alien of a records review and scheduling of an
> interview, which will ordinarily be expected to occur within approximately three
> months after release is revoked.  That custody review will include a final
> evaluation of any contested facts relevant to the revocation and a determination of
> whether the facts as determined warrant revocation and further denial of the
> release. ...

Similarly, initial release determinations into the ISAP program are made by the Executive

Associate Commissioner – *located in Washington, D.C.,* — upon recommendation by a "Review

Panel" which shall always include the Director of the HQPDU or his or her designee.  8 C.F.R.

241.4(i)(1)-(6).  The Executive Associate Commissioner is not bound by the panel's

recommendations, and thus has independent decision-making authority regarding the conditions

of supervised release.  8 C.F.R. 241.4(i)(1)-(6).  The regulations make clear that copies of all

documents relevant to the custody and release determinations must be centrally maintained at the HQPDU in addition to any relevant field office. 8 C.F.R. § 241.4(l)(3).

Accordingly, because the regulations instruct that the decisions at issue in this case were effected in Washington, D.C., and moreover, because the relevant documents related to Mr. Nken's custody are centrally located in Washington, D.C., this case is properly brought before this Court. *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264 (7th Cir. 1978) (finding that proper venue was in the District of Columbia because the decisions at issue were made by the FTC in the District of Columbia, noting that it is the wrongful conduct and not the ensuing injury which drives the venue inquiry); *see also Franz v. United States*, 591 F. Supp. 374 (D.D.C. 1984) (finding venue proper for FTCA claim because government respondents retained overall responsibility for the administration of the Program's witness protection and maintenance policies at issue); *Freeman v. Fallan*, 254 F. Supp. 2d 52 (D.D.C. 2003) (finding that because the discussions related to the drug-testing decisions at issue took place in D.C., venue was proper even though the actual drug-testing took place in other districts).

In short, because the regulations make clear that key decision-makers and the relevant documents are located in the District of Columbia – and because the venue is convenient to the parties — venue in the District of Columbia is proper under §1391(e). Even if another state was the proper venue for this case — which it is not — the proper remedy would be to transfer the case, not dismiss it as the government suggests. *Gipson v. Wells Fargo & Co.*, Civ. No. 07-1970, 2008 WL 2501149, *5 (D.D.C. Jun. 24, 2008) ("Although the choice of an improper venue sometimes warrants dismissal, "interest of justice" considerations more often require that the case be transferred under 28 U.S.C. § 1406"); *Nation v. U.S. Government*, 512 F.Supp. 121, 126-27 (D. Ohio 1981) ("[T]ransfer in and of itself is generally considered to be more in the 'interest

20

of justice' than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district."); *Smart v. Goord*, 21 F.Supp. 2d 309, 318 (S.D.N.Y. 1998) ("Even if venue were improper, a transfer to a proper forum would be preferable to dismissal."). As explained above, the REAL ID Act does not bar Mr. Nken's claims.

**IV.    Mr. Nken's Claims Are Not Moot.**

Finally, the government argues that irrespective of its arbitrary and illegal acts which lead to placing Mr. Nken at risk of imminent deportation of Mr. Nken, his claims are now moot because in the course of carrying out its unlawful actions, deportation, Mr. Nken "acted to prevent [his own removal]" and thus, the government now has legal authority under 8 U.S.C. §1231(a)(1)(C) to bootstrap its unlawful actions onto its detention authority. Mootness is an issue of subject matter jurisdiction. *Fletcher v. U.S. Parole Com'n*, 550 F. Supp. 2d 30, 36 (D.D.C. 2008) (noting mootness is "a matter of subject matter jurisdiction"); *Flores v. District of Columbia*, 437 F. Supp. 2d 22, 25 (D.D.C. 2006) (noting mootness motion seeks dismissal for lack of subject matter jurisdiction). It thus falls outside this Court's scheduling order seeking briefing on only some jurisdictional and venue issues. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1191 (2007) (holding that a court is free to address and resolve issues concerning jurisdiction in whatever order it chooses).

Even if the Court considers the government's argument, the government misses the point. Even if legal authority the government invokes provides an independent ground for Mr. Nken's detention, it fails to acknowledge the unlawful acts that put Mr. Nken at risk of deportation, including the alleged violation of the ISAP protocols, which is the basis of Mr. Nken's challenge and the "custody" at issue in this case. Furthermore, should Mr. Nken's deportation

21

be carried out as a result of the government's actions challenged in the habeas petition, the BIA

would lose jurisdiction over a remanded motion to reopen from the Fourth Circuit. 8 C.F.R.

1003.2(d); *c.f. William v. Gonzales*, 499 F.3d 329, 333 (2007). Declaratory judgment

regarding the legality of the government's attempted deportation of the Petitioner at this time is

still warranted.

　　In reviewing a motion to dismiss, the complaint must be construed "liberally in the

plaintiff's favor," "accept[ing] as true all of the factual allegations" alleged. *Redding v.*

*Edwards*, No. 00-1225 (EGS), 2008 WL 2987189, at *2 (D.D.C. August 5, 2008 ) (quoting

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 15 (D.C. Cir. 2008) and

citing *Kassem v. Washington Hosp. Ctr.,* 513 F.3d 251, 253 (D.C. Cir. 2008)). Plaintiff is

entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal v.*

*MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir.1994). Here, Mr. Nken's petition

states that ICE officials told him that his imminent deportation is a *direct consequence* of his

failure to comply with the conditions of ISAP. Amended Petition ¶ 23. That continues to be

the case. But for the way DHS applied that program, Mr. Nken would not be facing imminent

deportation while his motion to reopen his asylum and Convention Against Torture case is

pending on appeal. Because he still faces deportation as a direct consequence of ISAP, his

petition is not moot.[4]

---

[4] Even if Mr. Nken is deported, his petition will not have been rendered moot because there are
collateral consequences to deportation, including a 10 year bar to re-admission into the United
States. *See Leitao v. Reno,* 311 F.3d 453, 456 (1st Cir. 2002) ("We too hold that the bar on
readmission of a removed alien is a legally cognizable collateral consequence that preserves a
live controversy even after deportation of the petitioner."); *Tapia Garcia v. INS,* 237 F.3d 1216,
1218 (10th Cir.2001) (The "inability to reenter and reside legally in the United States with his
family is a collateral consequence of his deportation because it is clearly imposed as a matter of

(continued...)

## CONCLUSION

For the reasons set forth above, the Court should deny the government's motion to dismiss and find that this Court has jurisdiction to review Mr. Nken's habeas claims, and further find that venue properly resides in the District of Columbia.

Respectfully submitted this 29th day of August, 2008 by:


_____/s/_____
Morton Sklar (DC Bar # 144139)
Executive Director
and
Lynsay Gott (requesting admission *pro hac vice*)
Equal Justice Works Fellow and
Refugee Project Associate
WORLD ORGANIZATION FOR HUMAN RIGHTS USA
2029 P Street NW, Suite 301
Washington, DC  20036
Ph: 202-296-5702
Fax: 202-296-5704
msklar@humanrightsusa.org
lgott@humanrightsusa.org
*Counsel for the Petitioner*


Clifton S. Elgarten (DC Bar #494392)
Katherine J. Nesbitt (DC Bar # 474681)
Christopher E. Gagne (DC Bar # 366898)
CROWELL & MORING, LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Ph: 202-624-2523
Fax: 202-628-5116
*Counsel for the Petitioner*

---

(continued)

law."); *U.S. v. Wilson*, 240 Fed.Appx. 139, 144 (2007) ("[D]eportation after the petition is filed does not render the case moot so long as some collateral consequences of the removal remain, such as the bar to reentry.").

23

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on August 29, 2008, this Memorandum of Law on Jurisdiction and Venue Pursuant to the Court's July 16, 2008, Order and Opposition to the Respondent's Motion to Dismiss was served pursuant to the district court's ECF system as to the following ECF filers:

Gregory G. Katsas
Assistant Attorney General, Civil Division

David J. Kline
Director, District Court Section

Elizabeth J. Stevens
Assistant Director, District Court Section

Ms. Kathryn L. Moore
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
(202) 305-7099

_____/s/_____
Morton Sklar
Executive Director
World Organization for Human Rights USA
2029 P Street, NW, Ste. 301
Washington, D.C. 20036
(202) 296-5702
msklar@humanrightsusa.org
Counsel for the Petitioner

24

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ) | |
| **JEAN MARC NKEN** ) | |
| ) | |
| **Petitioner,** ) | |
| vs. ) | |
| ) | **Case No. 08-cv-1010 (CKK)** |
| **MICHAEL CHERTOFF, Secretary of** ) | |
| **Department of Homeland Security,** ) | |
| ) | |
| ) | |
| **Respondent.** ) | |
| _____ ) | |

**ORDER DENYING RESPONDENT'S MOTION TO DISMISS**

THIS MATTER comes before the Court based on Petitioner Jean Marc Nken's

Memorandum of Law on Jurisdiction and Venue Pursuant to the Court's July 16, 2008, Order

and Opposition to Respondent's Motion to Dismiss.  The Court being fully advised;

IT IS HEREBY ORDERED that Respondent's Motion to Dismiss is DENIED.  This

court has jurisdiction over Respondent Michael Chertoff and finds that venue properly resides in

the District of Columbia.  Furthermore, jurisdiction over Petitioner's claims is not barred by the

REAL ID Act of 2005, Pub. L. No. 109-113, 199 Stat. 231.

DATED this _____ day of _____2008.


_____
The Honorable Colleen Kollar-Kotelly