## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEAN MARC NKEN,

     Petitioner,

     v.

JANET NAPOLITANO, Secretary of the
Department of Homeland Security,

     Respondent.

Civil Action No. 08-1010 (CKK)

## MEMORANDUM OPINION
(April 9, 2009)

Petitioner Jean Marc Nken ("Petitioner") is a citizen and national of Cameroon who is

currently detained in Maryland and awaiting deportation pursuant to a final removal order issued

by the Board of Immigration Appeals ("BIA").  Petitioner has filed a petition for writ of habeas

corpus against Janet Napolitano in her official capacity as the Secretary of the Department of

Homeland Security (the "Secretary").[1]  Currently pending before the Court is the Secretary's [10]

Motion to Dismiss.  After thoroughly reviewing the parties' submissions, applicable case law,

statutory authority, and the entire record of the case as a whole, the Court shall GRANT the

Secretary's Motion to Dismiss, for the reasons that follow.

## I.  BACKGROUND

Petitioner is a national and citizen of Cameroon, who entered the United States in April

2001.  *See* First Amended Petition for Writ of Habeas Corpus, Docket No. [6], (hereinafter

"Petition"), ¶ 13.  According to his Petition, Petitioner's first application for asylum, withholding

---

[1] Secretary Napolitano is automatically substituted for Michael Chertoff, pursuant to
Federal Rule of Civil Procedure 25(d).

of removal and protection under the Conventional Against Torture was denied by an Immigration Judge ("IJ") on March 4, 2005.  *Id.* ¶ 5.  Petitioner appealed the IJ's decision to the BIA on March 31, 2005, and also submitted a motion to remand the case to the IJ in order to apply for an adjustment of status based on Petitioner's marriage to a U.S. citizen and pending I-130 application.  *Id.*  The BIA affirmed the IJ's denial of Petitioner's asylum application and denied the motion to remand on June 16, 2006.  *Id.* ¶ 6.  At that time, the BIA also issued a final order of removal.  *Id.*

Petitioner filed a Petition for Review with the Fourth Circuit Court of Appeals on July 14, 2006.  *Id.*  The Fourth Circuit denied that Petition for Review on April 3, 2007.  *Id.* ¶ 9; *Nken v. Gonzales*, 227 Fed. Appx. 265 (4th Cir. Apr. 3, 2007).  During the interim, Petitioner and his wife attended an I-130 interview, at which Petitioner was arrested and placed in detention.  Pet. ¶ 7.  Petitioner was subsequently released and placed in the Intensive Supervision and Appearance Program ("ISAP"), a form of supervised parole.  *Id.*  Also during the interim, Petitioner filed two motions to reopen the BIA's asylum proceedings based on his marriage to a U.S. citizen.  *See Nken I*, 559 F. Supp. 2d at 33-34.  The BIA denied those motions to reopen, and the Fourth Circuit denied a Petition for Review of the BIA's denial of one of Petitioner's motions to reopen. *Nken v. Mukasey*, No. 07-1633, 2008 WL 961628 (4th Cir. Apr. 9, 2008).  On May 6, 2008, Petitioner filed his third motion to reopen with the BIA, based on a claim of changed conditions in his home country of Cameroon.  Pet. ¶ 9.

Shortly thereafter, Petitioner was arrested and placed in detention in Maryland on May 30, 2008.  Pet. ¶ 10.  Petitioner was informed on June 11, 2008 that he would be deported on June 16 or June 17, 2008, and that his removal was the result of his failure to comply with the

ISAP supervised parole program. *Id.* ¶ 23. The date of his removal was later changed to June 19, 2008. *Id.*

On June 13, 2008, two days after Petitioner was informed of his imminent deportation, Petitioner filed an Emergency Petition for Writ of Habeas, Injunctive Relief and Stay of Removal. *See* Emergency Petition for Writ of Habeas, Injunctive Relief and Stay of Removal, Docket No. [1], (hereinafter "Emergency Petition"). The Emergency Petition, which the Court received in Chambers on the morning of June 16, 2008, raised various claims and sought various forms of relief. *See generally id.* In particular, the emergency portion of the petition asked the Court to issue injunctive relief in the form of a stay of Petitioner's removal from the United States in order to permit the BIA to consider the then-pending motion to reopen Petitioner's asylum application. *See Nken v. Chertoff*, 559 F. Supp. 2d 32, 32-33 (D.D.C. 2008). The Court decided to bifurcate the emergency portion of the Petition—*i.e.*, the request for the Court to stay Petitioner's impending removal—from the remainder of the claims and requests for relief raised in the petition. *Id.* By Order dated June 18, 2008, this Court concluded that it lacked jurisdiction to issue a stay of Petitioner's removal order. *Id.* The Court held that the Immigration and Nationality Act, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302, vests sole authority to review the BIA's final order of removal, as well as any claims arising from actions and proceedings brought in connection with the impending removal and claims arising from Executive Branch decisions to execute the removal order, in the Fourth Circuit Court of Appeals only. *Id.* The Court thus dismissed the emergency portion of the petition requesting a stay of the BIA's removal order. *Id.* at 38. The Court, however, explicitly did not reach the non-emergency portion of the petition. *Id.*

The next day, on June 19, 2008, ICE officials took Petitioner to the Baltimore Washington International Airport to deport him from the country.  Joint Status Report, Docket No. [9], (hereinafter "Joint Status Report") ¶ 4.  ICE officials, however, were unable to carry out Petitioner's removal because of his continued objections.  *Id.*; *see also* Pet. ¶ 24.  Shortly thereafter, on June 23, 2008, the BIA denied Petitioner's third motion to reopen his case based upon a claim of changed conditions in his home country of Cameroon.  Jt. Status Rep. ¶ 5.

Petitioner subsequently filed his First Amended Petition for Writ of Habeas Corpus with this Court on June 30, 2008.  *See generally* Pet.  The Petition alleges due process violations in connection with the ISAP program, which Petitioner claims resulted in ICE's decision to deport Petitioner.  *See id.* ¶¶ 83-86.  In addition, the Petition alleges that ICE's deportation of Petitioner before his motion to reopen was adjudicated would be a violation of due process and of the Convention Against Torture.  *See id.* ¶¶ 78-82.

The parties thereafter filed a Joint Status Report, as required by the Court, indicating the manner in which the parties proposed to proceed with the remaining claims in the Petition—*i.e.*, those claims not decided in the Court's June 18, 2008 Order addressing the emergency portion of Petitioner's claims.  *See* Jt. Status Rep.  The parties, in their Joint Status Report, raised a number of initial issues that the Court determined it must address before it could consider the merits of Petitioner's habeas claims.  Accordingly, the Court set a schedule for briefing and ordered that the parties' first round of legal briefing be limited to only two issues: (1) the Court's jurisdiction over Petitioner's habeas claims (as opposed to subject matter jurisdiction); and (2) venue for Petitioner's claims.  *See* 7/16/08 Min. Order.  All remaining merits-related issues, as well as subject matter jurisdiction, were held in abeyance pending further order by the Court.  *See id.*

4

Pursuant to that briefing schedule, the Secretary filed the instant Motion to Dismiss, which is currently pending before the Court.  *See* Resp.'s MTD, Docket No. [10].  Petitioner filed his Opposition, *see* Petr.'s Opp'n, Docket No. [15], and the Secretary her Reply, *see* Resp.'s Reply, Docket No. [17].  Accordingly, Respondent's Motion to Dismiss is now ripe.

However, before turning to the merits of the arguments now before it, the Court pauses briefly to note that Petitioner filed a notice with the Court after the close of briefing on the Secretary's Motion to Dismiss advising the Court that the United States Supreme Court had granted Petitioner's application for a stay of his removal, pending further order.  *See* Petr.'s Notice, Docket No. [18].  As indicated above, Petitioner had filed a third motion to reopen with the BIA on May 6, 2008, based on a claim of changed conditions in his home country of Cameroon.  *See supra* p. 4.  Shortly after the Court's June 18, 2008 Order dismissing the emergency portion of Petitioner's Emergency Petition, the BIA denied Petitioner's motion to reopen by order dated June 23, 2008.  Jt. Status. Rep. at 2.  Petitioner filed an appeal of the BIA's denial with the Fourth Circuit, as well as a motion for a stay of removal pending resolution of his petition for review.  Petr.'s Notice, Docket No. [18], at 2.  The Fourth Circuit subsequently denied Petitioner's motion for a stay, but did not rule on Petitioner's underlying appeal.  *Id.*  On November 7, 2008, Petitioner filed a petition for certiorari and an emergency motion for a stay of removal with the United States Supreme Court pending adjudication of the petition for review in the Fourth Circuit.  *Id.*  The Supreme Court granted Petitioner's application for a stay of his removal order, pending further order, and granted Petitioner's writ of certiorari to consider the applicable standard for deciding a request to stay an alien's removal pending consideration of the alien's petition for review.  *See id.*  As of the date of this Memorandum Opinion, no decision had

yet been issued by the Supreme Court nor does it appear that the Fourth Circuit has yet ruled on

Petitioner's underlying appeal.

## II. LEGAL DISCUSSION

As discussed above, the Court limited the initial round of briefing to the following two

threshold issues: (1) whether this Court has jurisdiction over Petitioner's habeas claims (as

opposed to subject matter jurisdiction); and (2) whether this Court is the proper venue for

entertaining Petitioner's habeas claims.  *See* 7/16/08.  Ultimately, the Court concludes that it

lacks jurisdiction over Petitioner's habeas action, for the reasons below.[2]  The Court therefore

does not reach the second question of venue.

Accordingly, the lone question now before the Court is whether it has jurisdiction over

Petitioner's habeas claims.  This question in turn breaks down into two related subquestions:

"First, who is the proper respondent to that petition?  And second, does the [Court] have

jurisdiction over him or her?"  *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  That is, a

petitioner must name the proper respondent, *and* the Court must have personal jurisdiction over

that person.  Petitioner in this case has named the Secretary of the Department of Homeland

_____

[2]   The Court notes that the parties also dispute whether Petitioner states a legally
cognizable habeas claim or whether such a claim, even if cognizable, is barred by the REAL ID
Act.  It is well established, however, that "there is no unyielding jurisdictional hierarchy," and the
Court may therefore start and end its analysis with the question of its jurisdiction over
Petitioner's habeas claims.  *See Rurhgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999);
*Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001)
("[a]pplying the principle that 'there is no unyielding jurisdictional hierarchy,'" and deciding
personal jurisdiction first, without reaching the question of Article III standing) (quoting
*Rurhgas*, 526 U.S. at 578).  The Court therefore explicitly does not reach the question of its
subject matter jurisdiction over Plaintiff's claims.  Accordingly, the Court need not address
section I of Petitioner's Opposition, which discusses the question of the Court's subject matter
jurisdiction—an issue that the Court instructed the parties not to address in their initial round of
briefing.

Security as the sole respondent to his writ for habeas corpus.  Neither party disputes that this Court has personal jurisdiction over the Secretary if she is the proper respondent.  The parties do, however, vigorously debate whether the Secretary is in fact the proper respondent to Petitioner's habeas action.  The Secretary argues that only proper respondent to the instant Petition is the warden of the Maryland detention facility in which Petitioner is presently detained.  As this Court lacks personal jurisdiction over the warden, the Secretary contends that the case must be dismissed for lack of jurisdiction.  *See* Resp.'s MTD at 4-6.  Petitioner disagrees and asserts that the Secretary is a proper respondent to this action.  *See* Petr.'s Opp'n at 13-16.  The Court ultimately agrees with the Secretary that: (1) the warden of the Maryland facility—not the Secretary—is the proper respondent to Petitioner's habeas petition; and (2) the Court lacks jurisdiction over the warden.  The Court shall examine each question in turn.

A.      *The Secretary is Not the Proper Respondent*

First, the Court must determine who is the proper respondent to the instant Petition for habeas relief.  In the typical context of a habeas action brought by a prisoner challenging his present physical confinement, it is beyond cavil that "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435.  This is known as the "immediate custodian rule." *See id.*  Although its application is well established in the prisoner context, it is less clear whether the same rule should also apply to habeas petitions brought by a detained alien awaiting deportation.  As both parties acknowledge, the question is one of first impression in the D.C. Circuit.  Moreover, although other courts outside this Circuit have reached the issue, these courts are divided as to whether the Secretary is a proper respondent to a detained alien's habeas

petition.  The Supreme Court recognized this split among the lower courts in *Padilla*, but

declined to resolve the question as it was not at issue in that case.  542 U.S. at 436, n. 8

("Because the issue is not before us today, we again decline to resolve it.").

In the briefing now before the Court, the Secretary contends that the immediate custodian

rule should apply in this case.  *See* Resp.'s MTD at 3-6.  Petitioner, by contrast, argues that the

Court should find that the Secretary is a proper respondent because she "is the government

official who exercises legal control and authority over the ISAP program and the enforcement of

deportation orders and because [s]he is the official responsible for the unlawful imminent

deportation."  Petr.'s Opp'n at 13.  As this is a question of first impression, the Court shall first

examine the immediate custodian rule before then turning to the question of the rule's

applicability to the instant habeas petition.

1.      The Immediate Custodian Rule

The federal habeas statute provides that the proper respondent to a habeas petition is

"the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also id.* § 2243 ("The

writ, or order to show cause shall be directed to the person having custody of the person

detained.").  As the Supreme Court has held, "[t]he consistent use of the definite article in

reference to the custodian indicates that there is generally only one proper respondent to a given

prisoner's habeas petition."  *Padilla*, 542 U.S. at 434.  "This custodian, moreover, is 'the person'

with the ability to produce the prisoner's body before the habeas court."  *Id.*  For more than 100

years, courts have understood that "these provisions contemplate a proceeding against some

person who has the *immediate custody* of the party detained, with the power to produce the body

of such party before the court or judge, that he may be liberated if no sufficient reason is found to

8

the contrary." *Id.* (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

The Supreme Court, in its decision in *Padilla,* confirmed "that in habeas challenges to present

physical confinement—'core challenges'—the default rule is that the proper respondent is the

warden of the facility where the prisoner is being held, not the Attorney General or some other

remote supervisory official." *Id.*

Accordingly, is it well settled that, in the typical prisoner context, a "habeas petitioner . . .

cannot properly bring suit against such officials as the Attorney General . . . .  Rather, the proper

defendant in federal habeas cases is the warden." *Chatman-Bey v. Thornburgh*, 864 F.2d 804,

811 (D.C. Cir. 1988); *see also Stokes v. United States Parole Comm'n*, 374 F.3d 1235, 1239

(D.C. Cir. 2004) (reaffirming immediate custodian rule).  Moreover, in the wake of the Supreme

Court's decision in *Padilla*, the D.C. Circuit has made clear that the immediate custodian rule is

not simply one of expedience that may be modified for policy reasons, but rather the default rule

that must be applied by district courts in determining whether it has jurisdiction over a prisoner's

habeas petition.  *See Stokes*, 374 F.3d at 1238 (rejecting prisoner's argument that the immediate

custodian rule is a policy rule rather than a hard and fast limitation, concluding that "[if] this

theory was once viable, it clearly is not after *Padilla*").

> 2.   Application of the Immediate Custodian Rule to a Habeas Petition Brought
>       by a Detained Alien Awaiting Deportation

The Court next turns to the question directly at issue in this case: is the immediate

custodian rule applicable to a habeas petition brought by an incarcerated alien challenging his

detention and imminent deportation?  The Court answers that question in the affirmative.

Although this is an issue of first impression in this Circuit, the Court is persuaded that the

immediate custodian rule applies in this instance for three primary reasons: (1) Supreme Court

precedent strongly suggests that application of the immediate custodian rule to habeas petitions

by detained aliens is appropriate; (2) the weight of authority from courts outside this Circuit

favors application of the immediate custodian rule in this instance; and (3) case law within this

Circuit indicates that the immediate custodian rule should apply to a habeas petition brought by a

detained alien.

> a.      Supreme Court precedent counsels in favor of applying the
>          immediate custodian rule to habeas petitions by alien detainees.

First, although the Supreme Court in *Padilla* expressly left open the question of whether

the Secretary is the proper respondent to a habeas petition filed by an alien detained pending

deportation, *see* 542 U.S. at  436, n. 8, the Court is persuaded that *Padilla's* legal reasoning

applies with equal force in the context of a habeas petition filed by a detained alien.  In *Padilla*,

the Supreme Court reaffirmed the principle that the immediate custodian rule applies to core

habeas challenges—*i.e.*, challenges to an individual's present physical custody.  *See* 542 U.S. at

437-42.  As the Supreme Court observed, the habeas statute indicates that there is only one

proper respondent to a given habeas petition and that is the person with the ability to produce the

prisoner's body before the habeas court.  *Id.* at 434-35.  Indeed, the Supreme Court explicitly

rejected any argument that a prisoner may bring a habeas petition challenging his present

physical custody against a government official who—although not his immediate

custodian—exercises the "legal reality of control" over the petitioner.  *Id.* at 439.  The *Padilla*

Court thus concluded:

> In challenges to present physical confinement, we reaffirm that the immediate
> custodian, not a supervisory official who exercises legal control, is the proper
> respondent.  If the "legal control" test applied to physical-custody challenges, a
> convicted prisoner would be able to name the State or the Attorney General as a
> respondent to a § 2241 petition.  As the statutory language, established practice, and

our precedent demonstrate, that is not the case.

*Id.* at 439-40.  The Court sees no principled distinction between the instant habeas petition filed

by an incarcerated alien awaiting deportation and a petition filed by a prisoner, nor has Petitioner

directed the Court to any logical reason for making such a distinction.

As an initial matter, Petitioner attempts to evade the clear impact of *Padilla* on his habeas

claims by characterizing his Petition as "challenging not just his physical confinement, but also

the arbitrary and unlawful government actions placing him at risk of imminent deportation."

Petr.'s Opp'n at 15.  Petitioner argues that, although the immediate custodian rule may be

applicable in cases in which a petitioner directly challenges his confinement, it should not apply

where, as here, Petitioner is challenging something more than just his present physical

custody—here, his imminent deportation and alleged due process violations in the ISAP

program.  *See id.* at 14-15.  Petitioner therefore appears to be attempting to distinguish his

Petition from the "core" habeas actions at issue in *Padilla*—*i.e.*, habeas challenges to present

physical custody.  Citing to *Braden v. 30th Judicial Conference*, 410 U.S. 484 (1973), Petitioner

thus contends that the proper "respondent is not the warden or physical custodian, but rather 'the

entity or person who exercises legal control with respect to the challenged custody.'" *Id.* at 14

(quoting *Padilla*, 542 U.S. at 438).  The Court, however, is not so persuaded.

Semantics aside, the instant habeas action "is at bottom a simple challenge to physical

custody imposed by the Executive—the traditional core of the Great Writ." *Padilla*, 542 U.S. at

441.  Petitioner in essence alleges that he is improperly detained by ICE in violation of his due

process rights, a challenge that is no different from the typical habeas challenge by a prisoner

seeking release from present physical confinement.  Indeed, even Petitioner admits that he is

challenging, at least in part, his "physical confinement."  *See* Petr.'s Opp'n at 15.

Moreover, Petitioner's reliance on *Braden* is misplaced.  In *Braden*, an Alabama prisoner filed a habeas petition in federal court in Kentucky.  410 U.S. at 487-88.  He did not contest the validity of his Alabama conviction or confinement, but instead challenged a retainer lodged against him in Kentucky state court.  *Id.*  Because the petitioner in *Braden* challenged a confinement that was to be imposed in the future—not his current physical custody—the Supreme Court held that the proper respondent was not the prisoner's Alabama warden (*i.e.*, his immediate physical custodian), but was instead the Kentucky court in which the retainer was lodged.  *Id.* at 488-89.  As the Supreme Court later made clear in *Padilla*, "the immediate custodian rule did not apply [in *Braden*] because *there was no* immediate physical custodian with respect to the 'custody' being challenged."  *Padilla*, 542 U.S. at 438 (emphasis in original).  Here, unlike in *Braden*, there is an immediate physical custodian with respect to Petitioner's challenged detention—the warden of the Maryland facility at which Petitioner is presently detained.  The simple fact that Petitioner attempts to raise issues related to his imminent deportation as well does not alter the fact that *there is* an immediate custodian with respect to Petitioner's challenged detention.[3]  Nothing in either *Padilla* or *Braden* supports a conclusion

_____

[3] Moreover, the Court notes that there is a question as to whether imminent deportation is itself a form of "custody" that may be challenged through a writ of habeas corpus.  As the Secretary points out, *see* Resp.'s Reply at 4 & n. 2, Petitioner assumes that imminent deportation is a form of "custody" for purposes of the federal habeas statute, but the case law upon which he relies does not establish that an action challenging imminent deportation asserts a cognizable habeas claim.  *See* Petr.'s Opp'n at 14.  Rather, these cases stand only for the principle that incarceration and parole are forms of restraint that constitute custody for purposes of the federal habeas statute.  *See Braden,* 410 U.S. at 488-89 (1973) (future confinement pursuant to an interstate detainer); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (parole); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (post-removal-period detention); *Urbina v. Godfrey*, No. CV 06-538, 2006 WL 2474881, *2-3 (D. Or. Aug. 22, 2006) (parole).  The Court, however, need not resolve

that the immediate custodian rule may be relaxed in cases in which a petitioner challenges his

immediate custody "*plus*"—here, plus his imminent deportation—notwithstanding the fact that

there is an immediate custodian with respect to the challenged custody.  Indeed, the Supreme

Court has reaffirmed that "nothing in *Braden* supports departing from the immediate custodian

rule in the traditional context of challenges to present physical confinement."  *Id.*  To the

contrary, *Braden* "reiterated the traditional rule that a prisoner seeking release from confinement

must sue his 'jailer.'"  *Id.*

Finally, the Court notes that Petitioner argues that "naming the warden of the federal

institution in Maryland would do nothing to remove Mr. Nken from 'custody.'"  Petr.'s Opp'n at

15-16.  Rather, Petitioner contends that the "individual exercising legal control over Mr. Nken's

deportation status and his status under the ISAP program,"—*i.e.*, the Secretary, according to

Petitioner—is the proper respondent.  *Id.* at 16.  In essence, Petitioner argues that the Secretary is

the correct respondent because he ultimately "controls" Petitioner's release.  This argument,

however, is inconsistent with the Supreme Court's decision in *Padilla*.  As discussed above, *see*

*supra* pp. 10-11, the *Padilla* Court rejected the "legal control test" in habeas actions challenging

present confinement.  542 U.S. at 439-40 & n. 12.  The proper respondent is the person

responsible for maintaining—not authorizing—the custody of the prisoner.  *Id.* at 440, n. 13

(citing *Marri v. Rumsfield*, 360 F.3d 707, 711 (7th Cir. 2004)).[4]

───────────────

this issue given its conclusion above that the immediate custodian rule applies nonetheless.

[4] In addition, to the extent Petitioner contends that the Secretary is the proper respondent because he has ultimate responsibility for the ISAP policy decisions that Petitioner challenges, *see* Petr.'s Opp'n at 16, the D.C. Circuit has made clear that habeas actions "aimed at policy fashioned in Washington, D.C. need not be brought in this district."  *Chatman-Bey*, 864 F.2d at 811.  Rather, "the federal court of the jurisdiction where the individual is incarcerated (or

> b.  The weight of the case law from other circuits supports application of the immediate custodian rule to habeas petitions by a detained alien.

Second, the majority of circuits that have addressed this question agree that no principled distinction exists between habeas actions brought by a prisoner and those brought by a detained alien and have therefore held that an alien is precluded from naming the Attorney General or the Secretary[5] as a respondent to his habeas petition. *See Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006) (applying immediate custodian rule and finding that warden of the facility in which alien is detained is the only proper respondent); *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003) (finding that the Attorney General is not a proper respondent); *Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000) (same); *Yi v. Maugans*, 24 F.3d 500 (3d Cir. 1994) (same). The only circuit to have departed from this approach was the Ninth Circuit in *Armentero v. INS*, 340 F.3d 1058 (9th Cir. 2003), in which the court held that the Attorney General and the Secretary were proper respondents to a habeas petition filed by an alien challenging his detention. That decision,

---

otherwise "in custody") can properly entertain the action." *Id.*

[5] Prior to March 2003, the Immigration and Naturalization Services ("INS") within the Department of Justice was responsible for immigration functions. The Homeland Security Act, however, abolished the INS in March of 2003 and transferred its functions to various agencies within the newly created Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (codified at 6 U.S.C. §§ 251, 271, 291 (2006); *see also Kaur v. Chertoff*, 489 F. Supp. 2d 52, 56, n. 5 (D.D.C. 2007). Accordingly, prior to enactment of the Homeland Security Act, the Attorney General was the supervisory official with ultimate responsibility for immigration functions, while the Secretary now has that role. Thus, cases examining this issue prior to March 2003 address whether a detained alien may name the Attorney General as the proper respondent, while cases after March 2003 generally address whether the Secretary may be named as the proper respondent. This distinction, however, is immaterial, as the question turns on whether a detained alien may name the head of the department that is responsible for immigration functions—whether that is the Attorney General before March 2003 or the Secretary after March 2003—and the Court therefore treats the two positions as interchangeable throughout the instant Memorandum Opinion.

however, was subsequently withdrawn by the Ninth Circuit with directions that "[i]t may not be cited as precedent by or to this court." *See Armentero v. INS* , 382 F.3d 1153 (9th Cir. 2004); *cf. Saut v. Chertoff*, No. CIV-F-08-0599, 2008 WL 1970564, *2 (E.D. Cal. May 2, 2008) (recognizing that the decision in *Armentero* had been withdrawn and concluding that it therefore "appears that no circuit court has found that the head of the U.S. Department in charge of immigration (be it the Department of Homeland Security or the Department of Justice) to be a 'custodian' for purposes of habeas relief in a Section 2241 case brought by an alien detained pending deportation"). Although the Second Circuit has discussed the question at some length, it ultimately declined to decide the issue. *See Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998). Accordingly, the weight of authority favors application of the immediate custodian rule to habeas petitions filed by an incarcerated alien awaiting deportation, such that the Secretary (or the Attorney General pre-2003) is not the proper respondent.

Although case law from other circuits is not binding, the Court finds the legal reasoning of the decision from the First, Third, Sixth and Seventh Circuits to be persuasive. These decisions rest on the conclusion that "there is no principled distinction between an alien held in a detention facility awaiting possible deportation and a prisoner held in a correction facility awaiting trial or serving a sentence." *Vasquez*, 233 F.3d at 693; *see also Roman*, 340 F.3d at 321 ("We see no reason to apply a different rule for identifying a petitioner's custodian depending on whether the petitioner is an alien or a prisoner."). As the First Circuit observed:

> Since the case law establishes that the warden of the penitentiary not the Attorney General is the person who holds a prisoner in custody for habeas purposes, it would be illogical to hold that the appropriate respondent in an alien habeas case is someone other than the official having day-to-day control over the facility where the alien is being detained.

15

*Vasquez*, 233 F.3d at 693.  As stated above, the Court agrees that there is no principled

distinction justifying an alternative rule in habeas petitions involving aliens rather than prisoners.

In addition, the Court agrees with the First Circuit that the habeas statute "does not

indicate that a petitioner may choose from among an array of colorable custodians, and there is

nothing about the nature of habeas practice that would justify a court in stretching the statute's

singular language to encompass so mischievous an interpretation."  *Vasquez*, 233 F.3d at 693.

Indeed, the Supreme Court's decision in *Padilla* confirms that there is generally only one proper

respondent to a habeas petition and that person is the individual with the ability to produce the

prisoner's body before the habeas court.  542 U.S. at 435.  Although unclear, it appears that

Petitioner may be suggesting to the contrary—*i.e.*, that a petitioner may choose among proper

respondents.  *See* Petr.'s Opp'n at 14-15 ("the proper respondent need *not* be the warden of the

facility where the alien is physically held, but rather the official responsible for deportation").  To

the extent Petitioner argues that more than one respondent may be proper and that he may choose

which he names in his habeas petition, such an argument is in direct conflict with the Supreme

Court's decision in *Padilla*.

Finally, the Court concurs that significant practical concerns counsel in favor of a rule

precluding aliens from bringing habeas petitions against the Secretary.  As the Sixth Circuit

observed, "[t]he adjudication of habeas corpus petitions filed by detained aliens would become

considerably more difficult to administer if we were to . . . interpret[] the word 'custodian' in §

2243 to refer to not only an alien's immediate custodian, but also other officials with control over

the alien's detention."  *Roman*, 340 F.3d at 322.  In particular, "allowing alien habeas petitions to

name the Attorney General (over whom all district courts presumably have personal jurisdiction)

16

as a respondent will encourage rampant forum shopping." *Vasquez*, 233 F.3d at 694. "Although venue considerations would limit the number of jurisdictions in which a petitioner could file, courts would nevertheless be forced 'in many cases to undertake fact-intensive analyses of venue and forum non conveniens issues.'" *Roman*, 340 F.3d at 322 (quoting *Vasquez*, 233 F.3d at 694). The Court thus agrees that the immediate custodian rule "effectuates section 2243's plain meaning and gives a natural, commonsense construction to the statute," *Vasquez*, 233 F.3d at 693, and that it should apply equally to habeas petitions brought by detained aliens awaiting deportation.

Petitioner ignores these decisions from the First, Third, Sixth and Seventh Circuit, and instead focuses only on the minority of courts that have held that the Attorney General or Secretary may be a proper respondent in a habeas action brought by a detained alien, ignoring the weight of the case law to the contrary. *See* Petr.'s Opp'n at 14-15. First, Petitioner relies heavily on the Ninth Circuit's decision in *Armentero*, but fails to acknowledge that, as discussed above, the case was subsequently withdrawn with directions that "[i]t may not be cited as precedent by or to this court." *See Armentero*, 382 F.3d at 1153. Second, Petitioner cites to a handful of district court cases exclusively from the Second Circuit that conclude the Attorney General or Secretary may be a proper respondent in a habeas action brought by a detained alien awaiting deportation. *See* Petr.'s Opp'n at 15 (citing *Patterson v. INS*, No. Civ. A. 3:03CV1363, 2004 WL 1114575 (D. Conn. May 14, 2004); *Alcaide-Zelaya v. McElroy*, Nos. 99Civ5102 & 99CIV9999, 2000 WL 1616981 (S.D.N.Y. Oct. 27, 2000); *Farez-Espinoza*, No. 08CIV11060, 2009 WL 195937 (S.D.N.Y. Jan. 28, 2009)). The Court, however, is not persuaded by these decisions. These cases generally rely on the Second Circuit's pre-*Padilla* decision in *Henderson*,

17

which suggests (but does not decide) that the Attorney General or Secretary is a proper respondent in this circumstance. *See Henderson*, 157 F.3d at 122-128. The Supreme Court's decision in *Padilla*, however, casts significant doubt on the Second Circuit's reasoning in *Henderson*. For example, in *Henderson*, the Second Circuit reasons that the "the concept of 'in custody' for habeas purposes has broadened in recent years," as a result of which "the rules treating the immediate custodian as the only proper respondent and that person's situs as the sole correct venue have not been applied consistently or in a rigid fashion." 157 F.3d at 124. The Supreme Court, however, rejected an almost identical argument by the Second Circuit in *Padilla*. 542 U.S. at 437 (rejecting the "Court of Appeals' view that we have relaxed the immediate custodian rule in cases involving prisoners detained for 'other than federal criminal violations'"). The *Henderson* Court also found that "additional factors relating to the unique role the Attorney General plays in immigration matters may be taken to suggest that she may be a proper respondent in alien habeas cases." 157 F.3d at 125-26. Again, however, the Supreme Court soundly rejected a similar argument in *Padilla*. The Court held that Secretary Rumsfeld's "unique" and "pervasive" involvement in the petitioner's detention did not justify naming him as a respondent, and that such an argument conflates the person responsible for maintaining detention with the person responsible for authorizing detention. *Padilla*, 542 U.S. at 440, n. 13. The Court, therefore, is not persuaded by the decisions cited by Petitioner and declines to follow their reasoning.

          c.      Case law within this Circuit further supports application of the immediate custodian rule to habeas petitions filed by detained aliens.

Although the D.C. Circuit has not ruled on this issue[6] and the case law on this question in this Circuit is extremely sparse, the little case law within this Circuit that has addressed this issue further supports the conclusion that the Secretary is not the proper respondent in this habeas action.  By the Court's own review, it appears that only two district court decisions in this Circuit have addressed this question.  Although neither case examined the question in detail, both decisions concluded that the Attorney General was not a proper respondent.  In *Placide v. Gonzales*, No. Civ. A. 05-1106, 2005 WL 1429750 (D.D.C. Jun. 17, 2005), the petitioner was detained by the INS in a Louisiana facility awaiting deportation and filed a habeas action against the Attorney General challenging his detention.  Judge Reggie B. Walton held that "it is well-settled that the proper respondent in a habeas action challenging present physical custody is the warden of the facility in which the petitioner is being detained." *Id.* at * 2.  Accordingly, Judge Walton concluded that "because the petitioner is detained in Louisiana, any such claim must be brought against the petitioner's immediate custodian, who is located within the Eastern District of Louisiana." *Id.*  The court therefore granted the Attorney General's motion to dismiss. *Id.* at *3.

Similarly, in *Ozoanya v. Reno*, 968 F. Supp. 1 (D.D.C. 1997), the petitioner was detained

---

[6] The Court notes that the only decision in which the D.C. Circuit appears to have contemplated this particular question was an unpublished order, *In re Smith*, No. 99-5116, 1999 WL 506695 (D.C. Cir. Jun. 8, 1999), in which the Court of Appeals suggested through citation that the Attorney General or Secretary may not be the appropriate respondent.  Pursuant to the D.C. Circuit's rules, however, the Court does not cite the unpublished decision from 1999 as precedent.  *See* Circuit Rule 32.1(b)(1)(A).

in an INS detention facility in Oakdale, Louisiana, and filed a habeas petition challenging the constitutionality of his deportation orders and related proceedings.  Judge Paul L. Friedman determined that, "[l]ike all habeas corpus petitions, this action is subject to the jurisdictional and statutory limitations on petitions for writs of habeas corpus."  *Id.* at 8.  Judge Friedman therefore concluded that the petitioner's writ of habeas "must be directed to the custodian of the detainee, the INS district director at Oakdale Louisiana," rather than the Attorney General.  *Id.*  The D.C. District Court lacked personal jurisdiction over the immediate custodian, and Judge Friedman therefore transferred the case to the United States Court for the Western District of Louisiana. *Id.*

Accordingly, the Court is persuaded that the immediate custodian rule generally applies to habeas petitions brought by detained aliens awaiting deportation.[7]  Applying that rule to the instant case, it is clear that the warden of the Maryland facility where Petitioner is detained—and not the Secretary—is the proper respondent to Petitioner's habeas petition.  Having now

---

[7] Both the First Circuit and the Sixth Circuit have noted the possibility of an exception to this rule.  In *Vasquez*, the First Circuit recognized that extraordinary circumstances may justify naming the Attorney General as the proper respondent where, for example, the government continually spirits the alien from one site to another in an attempt to manipulate jurisdiction.  233 F.3d at 696.  In *Roman*, the Sixth Circuit similarly recognized that extraordinary circumstances may warrant permitting a detained alien to name the Attorney General as a respondent where doing so "is necessary to preserve a person's access to habeas corpus relief."  340 F.3d at 325. Neither situation is implicated in the case at hand, however, as it appears that Petitioner has been incarcerated in the same Maryland facility throughout the pendency of this case and nothing precludes Petitioner from bringing a habeas action against the correct respondent.  Indeed, Petitioner has presented no evidence of such "extraordinary circumstances" nor does Petitioner even argue that, in the event the immediate custodian rule applies generally, his particular habeas action should nonetheless be excepted.  *See generally* Petr.'s Opp'n.  Accordingly, even assuming that the First and Sixth Circuits are correct that certain exceptions apply in extraordinary circumstances, this case would not fall under any such exception.

established the proper respondent, the Court next turns to the second and final question: does this Court have jurisdiction over the warden?

> B.        *The Court Does Not Have Jurisdiction Over the Proper Respondent*

District courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a).  The Supreme Court has "interpreted this language to require 'nothing more than that the court issuing the writ have jurisdiction over the custodian.'"  *Padilla*, 542 U.S. at 442 (quoting *Braden*, 410 U.S. at 495).  This requirement

> forms an important corollary to the immediate custodian rule in challenges to present physical custody under § 2241.  Together they compose a simple rule that has been consistently applied in the lower courts, including in the context of military detentions: Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.

*Id.* at 446-47.  The Supreme Court has cautioned that, without this rule, "a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction."  *Id.* at 447.  "The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago."  *Id.*

Consistent with Supreme Court precedent, the Secretary asserts that this Court lacks jurisdiction over the warden of the Maryland facility.  Resp.'s MTD at 6.  Petitioner for his part does not address, much less dispute, the Secretary's contention that the Court lacks jurisdiction over the warden.  *See generally* Petr.'s Opp'n.  "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25

21

(D.D.C. 2003), *aff'd* 98 Fed. Appx. 8 (D.C. Cir. 2004).  Petitioner has thus conceded the point.

Regardless, it is clear that this is not "the petition in the district of confinement," *Padilla*, 542

U.S. at 447, and this Court therefore lacks jurisdiction over Petitioner's habeas claims.

Accordingly, the instant case must be dismissed.

### III.  CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Respondent's [10] Motion to

Dismiss.  The instant case is dismissed in its entirety.  An appropriate order has previously been

issued.

Date:   April 9, 2009

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge